**NORTHGATE**
REAL ESTATE GROUP

RETENTION AGREEMENT

This Retention Agreement ("Agreement") is between 52 Charlie LLC ("Debtor") and Northgate Real Estate Group ("Northgate"). Debtor hereby employs and retains Northgate, granting Northgate for a period of time as set forth herein to act as special real estate advisor for the Debtor having, among other things, the sole, exclusive, and irrevocable right and authority to sell, arrange financing or refinancing, recapitalization, negotiate a joint venture, net lease or otherwise dispose of all or any portion of the real property and/or air rights pertaining to 52 Charles Street, New York, NY 10014 (the "Property"), in each case subject to the rights of 52 Charles Street Lending LLC as holder of a senior secured first priority perfected mortgage on the Property (the "Senior Secured Lender").

1. Subject to approval of the Bankruptcy Court (defined hereinafter), the term of Debtor's retention of Northgate shall be effective and commence on the date this Agreement is executed by both parties and shall continue in effect for one hundred fifty (150) days from the date of entry of an order of the Bankruptcy Court approving this Agreement (the "Term"). Thereafter, the Term may be extended for successive thirty (30) day periods until terminated by either party upon written agreement by the parties and the Senior Secured Lender.

2. (A) Northgate will be paid a commission equal to five percent (5%) of the gross purchase price of the Property, which will be paid as a buyer's premium by the successful purchaser, separate from and in addition to the consideration (or gross purchase price) that the successful purchaser pays for the Property, upon the occurrence of any of the following events:

    i.  Debtor sells or enters into a definitive written agreement during the Term to sell, transfer or convey ownership of the Property in whole or in part, whether individually or as part of a package, or a sale of the Property at a bankruptcy auction, or other sale permitted by the bankruptcy court, such as a sale under section 363 of the Bankruptcy Code or pursuant to a confirmed plan of reorganization, or the Property is otherwise sold during the Term (other than to the Senior Secured Lender). The commission will be paid by the successful purchaser, in the form of a buyer's premium, separate from and in addition to the consideration (or gross purchase price) that the successful purchaser pays for the Property; or

    ii. If a sale, exchange, or other conveyance of the Property or ownership or control of the Property is made or takes place within 120 days of the expiration of the Term (the "Additional Period") to a Prospective Purchaser (as defined below) with whom Debtor had not reached an agreement during the Term, but with whom Northgate has communicated or negotiated with concerning the Property during the Term, or who was formally introduced to Debtor and the Property by Northgate during the Term. For these purposes, a "Prospective Purchaser" shall include partnerships, joint ventures, limited liability companies, corporations, trusts or other similar entities which the prospective buyer represents, is involved with, or in which it holds an ownership, management, or beneficial interest., and shall exclude the Senior Secured Lender

_____

Northgate Real Estate Group | 1633 Broadway, 46th Floor, New York, NY 10019 | (212) 369-4000

1

# NORTHGATE
### REAL ESTATE GROUP

(and any affiliate thereof). The Senior Secured Lender reserves its right to object to the inclusion of any party on the Prospective Purchaser list.

(B) Northgate will be entitled to a commission regardless of whether the buyer or other party entering into the subject transaction with Debtor was first introduced to the Property by Northgate (other than the Senior Secured Lender), regardless of whether the closing occurs after the expiration of the Term up until expiration of the Additional Period.

(C) Debtor will not close on any sale or transfer of the Property unless the buyer's premium is (a) paid to Northgate at the closing pursuant to an order of the Bankruptcy Court approving a fee application, or (b) the successful purchaser deposits the buyer's premium to be held by Debtor's counsel in escrow pending Bankruptcy Court approval of Northgate's fee application.

(D) If Debtor enters into a contract for the sale of the Property during the Term or the Additional Term, the result of which would entitle Northgate to a commission hereunder, and a higher or better offer is approved by the Bankruptcy Court, then regardless of who may be the successful purchaser, Northgate will be entitled to a commission paid by the successful purchaser pursuant to the terms of this Agreement, as, if and when the closing with the successful purchaser occurs, based on the successful purchaser's gross purchase price.

(E) Notwithstanding the foregoing, if the Senior Secured Lender is the successful purchaser by bidding up to $7 million, it shall be obligated to pay a buyer's premium in the amount of 1% of the credit bid. If the Senior Secured Lender is the successful purchaser by bidding $7 million or more, it shall be obligated to pay a buyer's premium in the amount of 1.75% of the credit bid or purchase price. If any assignee of Senior Secured Lender not affiliated with Lender is the successful purchaser and/or closes on the purchase of the Property, then the assignee must pay the buyer's premium equal to five percent (5%) of the gross purchase price for the Property. An assignee affiliated with the Senior Secured Lender shall pay the same commission as the Senior Secured Lender.

(F) Any contract of sale signed by Debtor and any bidding procedures order submitted by Debtor for a sale of the Property will provide that the buyer's premium in its entirety be paid by a successful purchaser, to the Debtor within 48 hours of the conclusion of the auction sale, to be held in escrow pending the approval of the successful bidder by the Bankruptcy Court and the closing of the sale of the Property to the successful bidder. If the successful purchaser defaults under the contract of sale and fails to close on its purchase, the buyer's premium will be entitled to be paid to and retained by Northgate as compensation hereunder, provided same has been approved by the Bankruptcy Court. The foregoing provision shall not be appliable to the Senior Secured Lender who shall be obligated to pay the buyer's premium at closing.

(G) Notwithstanding anything to the contrary set forth in this Agreement, any sale, exchange, or other conveyance of the Property during the Term or the Additional Period to Adam Glick (or any entity affiliated therewith) shall result in the obligation of Adam Glick (or such affiliated entity) to pay the Buyer's Premium in the amount of 1.5%.

___

Northgate Real Estate Group | 1633 Broadway, 46th Floor, New York, NY 10019 | (212) 369-4000

**NORTHGATE**
REAL ESTATE GROUP

3. Should, during the Term, Debtor enter into an agreement to refinance, borrow against, restructure its existing obligations encumbering the Property, including debt or interest rate, and/or recapitalize the Property, in whole or in part, and/or enter into a joint venture agreement relating to the Property, or should Debtor enter into such an agreement during the Additional Period with a person or entity with whom Northgate has negotiated concerning the Property, or to whose attention the Property has been brought by Northgate, or who was introduced to Debtor by Northgate during the Term, then Debtor will pay Northgate, at closing, a fee in an amount equal to five percent (5%) of the aggregate amount of gross refinancing or restructured indebtedness, recapitalization, and/or joint venture investment received or obtained, or to be received or obtained by Debtor, as the case may be, regardless of when the closing of same takes place. Notwithstanding anything to the contrary contained herein, in the case of any outcome other than a sale, refinance, restructuring, or recapitalization or joint ventureof the Property, Northgate will receive a flat fee for its services in the amount of twenty thousand dollars ($20,000), of which $10,000 is to be paid by Debtor and $10,000 will be paid by the Senior Secured Lender.

4. All inquiries, offers, expressions of interest and communications from principals, outside brokers and other parties or professionals received during the Term will be re-directed and referred to Northgate by Debtor, its principals, officers, counsel, accountants and other professionals or representatives and all such offers, inquires, expressions of interest and related communications shall also be promptly communicated in writing to Senior Secured Lender. Debtor agrees to conduct all negotiations through Northgate exclusively and to advise all interested people of this exclusive right. Should another broker be involved in a sale, refinancing, recapitalization or restructuring of the Property, it may seek compensation only from its client. Northgate and the Debtor shall keep Senior Secured Lender updated and apprised in writing as to any offers, inquiries, expressions of interest and related communications with respect to the Property.

5. Subject to approval by the Bankruptcy Court, Debtor will reimburse, up to a maximum of $5,000, the out-of-pocket expenses incurred by Northgate in its performance under this Agreement, including without limitation reasonable expenses of marketing, advertising, promotion, travel and transportation, postage, courier and overnight express fees. Northgate will be reimbursed for its out-of-pocket expenses at the time of closing, or alternatively, upon forwarding an invoice to Debtor, if the Property is not sold. For the avoidance of doubt, Northgate's right to this expense reimbursement is separate and apart from any right it may have to a fee or commission hereunder.

6. Debtor will, promptly after its execution of this Agreement, file an application and proposed order seeking from the Bankruptcy Court approval of its employment of Northgate pursuant to the terms of this Agreement, pursuant to section 327(a) of the Bankruptcy Code. Debtor agrees and acknowledges to attach a complete copy of this Agreement to the application. Debtor will provide Northgate the employment application and proposed order authorizing Debtor's employment of Northgate sufficiently in advance of their filing in order for Northgate to have ample time to review and discuss any comments it may have with Debtor, and the employment application must be acceptable to Northgate in its discretion. The proposed order will include, without limitation, the following terms and conditions: (a) finding that none of the fees or commissions to Northgate hereunder constitute a "bonus" under applicable law; (b) directing that Northgate will be exempt from keeping time records for its work hereunder (as Northgate will not be billing on an hourly basis); (c) finding that the terms and conditions of this Agreement are reasonable; and

---

Northgate Real Estate Group | 1633 Broadway, 46th Floor, New York, NY 10019 | (212) 369-4000

    (d) directing that any unpaid commissions, fees, and marketing expenses owed to Northgate shall be treated as an administrative claim under Section 507(a)(1) of the Bankruptcy Code.

7. If Debtor obtains an order of the Bankruptcy Court authorizing its use of cash collateral or debtor in possession financing and if the order requires submission of a proposed budget specifying post-petition expenditures, then Debtor will include in the budget line items providing for the payment of commissions or fees to be paid or reimbursed under this Agreement. All amounts projected to be paid to Northgate under this Agreement will be included in the carve-out for professionals provided in Debtor's bankruptcy case.

8. This Agreement may not be modified, assigned and/or rescinded, and once approved by the Bankruptcy Court, will be binding on and inure to the benefit of all parties including any of Debtor's affiliates, representatives, designees, successors, and assigns, unless it is changed in a writing signed by both parties. Debtor agrees to incorporate this Agreement into any sales contract for the Property; provided that, any increase or other change to the fees, commissions or expense reimbursement rights of Northgate under this Agreement shall require the prior written consent of Senior Secured Lender.

9. Debtor will deliver to Northgate all financial and other information requested by Northgate for the purpose of its performance hereunder, including without limitation title reports, engineering, and environmental reports, building plans, plot plans and surveys, income and expense statements, lease summaries, and rent roll. All information provided by Debtor to Northgate will be, to the knowledge of Debtor, accurate and complete in all material respects, and if Debtor becomes aware that any information it has provided Northgate is or has become materially inaccurate or incomplete, Debtor will promptly so notify Northgate in writing. Debtor agrees to disclose to Northgate any existing liens or encumbrances against the Property (other than the senior secured first priority perfected mortgage held by Senior Secured Lender) and further agrees to disclose any new liens which arise during the Term. Debtor will immediately inform Northgate of any building code violations, environmental hazards or contamination relating to the Property, and of any existing or pending violation of federal, state, or local environmental laws that become known to Debtor. If Debtor has ordered any environmental reports or studies, as soon as same become available, Debtor will immediately provide a true and complete copy to Northgate, and Northgate is hereby authorized to disseminate same to prospects. Northgate will be entitled to rely, without independent verification, on the accuracy and completeness of all information supplied to it by Debtor and Northgate will not be responsible to Debtor, its creditors, or any third party for the inaccuracy or incompleteness of any information provided to it by Debtor.

10. To the fullest extent permitted by applicable law, Debtor will indemnify and hold Northgate and its employees (each a "Covered Person") from and against any and all losses, claims, demands, liabilities, expenses, judgments, fines, settlements and other amounts arising from any and all claims, demands, actions, suits, proceedings, civil, criminal, administrative or investigative in which the Covered Person may be involved, or threatened to be involved; as a party or otherwise, relating to or arising out of this Agreement or performance thereunder, except that no Covered Person shall be entitled to such indemnification with respect to any loss, claim, damage, demand, liability, expense, judgment, fine, or settlement incurred by such Covered Person by reason of such Covered Person's own gross negligence, willful misconduct or willful breach of this Agreement.

**NORTHGATE**
REAL ESTATE GROUP

11. All requests for payment of indemnity, contribution or reimbursement pursuant to this Agreement shall be made by means of an application (interim or final as the case may be) and shall be subject to review and approval by the Court to ensure that payment of such indemnity, contribution or reimbursement conforms to the terms of this Agreement and is reasonable based upon the circumstances of the litigation or settlement in respect of which indemnity, contribution or reimbursement is sought; *provided, however*, in no event shall Northgate be indemnified to the extent the Court determines by final order that any claim or expense has resulted from gross negligence or willful misconduct on the part of Northgate.

    [Debtor will share with Northgate information Northgate may request regarding the source of any sale, refinancing, or recapitalization of the loan that Debtor asserts did not involve Northgate or any of its agents or representatives to the extent such information may affect Northgate's entitlement to payment hereunder.

12. Any commission or fee to which Northgate is entitled under this Agreement, as the case may be, must be paid by official bank/certified check or wire and must be approved by the Bankruptcy Court upon the filing of a fee application, and the rights of all parties-in-interest to raise any objection to fee applications filed by Northgate are preserved.

13. Each party to this Agreement will deal with the other fairly so as to allow it to perform its duties and to receive the benefits of this Agreement and will not interfere, prevent, or prohibit the other party, in any manner, before or during the closing of a sale of the Property, from carrying out its obligations under or receiving the benefits of this Agreement.

14. Should the Bankruptcy Court order a sale of the Property at auction, Northgate is authorized to act as the auctioneer and all terms will remain the same.

15. Debtor represents and warrants to Northgate that:

    a. Upon approval by the Bankruptcy Court, Debtor will have the right, power, and authority to retain Northgate and will be authorized and directed to perform this Agreement, and this Agreement will constitute a valid and legally binding obligation of Debtor, enforceable in accordance with its terms.

    b. To the best of Debtor's knowledge and unless otherwise previously disclosed, Debtor now holds (and, up to the moment of sale provided for under this Agreement, will hold) good and marketable or insurable title to each Property, subject to the rights of the Senior Secured Lender.

    c. If Debtor reaches an agreement with a third party to refinance, borrow against, recapitalize, or sell any of the Property, Debtor will use its best efforts to obtain, and will not delay, any effort, application, petition, or motion to obtain any necessary approval of the Bankruptcy Court or any other judicial, governmental, or regulatory authority approval.

16. Debtor agrees that Northgate and its affiliates, and their respective officers, directors, employees, agents, and representatives will not be liable (whether directly or indirectly, in contract, tort, or otherwise), to Debtor or its security holders or creditors for any matter, cause or thing related to or arising out of the retention of Northgate pursuant to, or the performance by Northgate of services under, this Agreement except to the

___

Northgate Real Estate Group | 1633 Broadway, 46th Floor, New York, NY 10019 | (212) 369-4000

**NORTHGATE**
REAL ESTATE GROUP

extent that Northgate is found by final judgment by a court of competent jurisdiction to have acted in bad faith, or with gross negligence or to have engaged in willful misconduct in providing services pursuant to this Agreement.

17. All fees payable to Northgate hereunder will be free and clear of any liens, claims, and encumbrances, including the liens of any secured creditor of Debtor.

18. Except as otherwise set forth herein, including Section 22 below, Northgate will not be responsible for any other fees or commissions in connection with a disposition, refinancing, or recapitalization by the Debtor, including any fees or commissions that may be owed to any other broker.

19. Debtor's obligations under this Agreement will survive any change in control of the Debtor. If a trustee in bankruptcy is appointed for the Debtor, this Agreement will survive and remain in full force and effect.

20. Northgate may, at its own discretion, seek the cooperation of other licensed real estate brokers and professionals in the sale, refinancing or recapitalization of the Property. If the sale, refinancing or recapitalization of the Property is effected by another broker cooperating with Northgate at Northgate's request, then Northgate will be paid the above defined commission at closing, out of which Northgate shall compensate the external party with an amount previously agreed upon between Northgate and the external party. In such situation Northgate will disclose any such agreement in any fee application.

21. The Bankruptcy Court will retain jurisdiction over any and all disputes under or otherwise relating to the construction and enforcement of the transactions contemplated hereunder. If the Debtor's bankruptcy case is dismissed, or the Automatic Stay is lifted or modified with respect to a Property and that Property is not disposed of under Bankruptcy Court jurisdiction, then any dispute between the parties arising under this Agreement will be resolved in the New York State Supreme Court, County of New York, Commercial Division.

22. From time to time, Northgate or one of its affiliated entities may and shall have the right to advise or to provide services to several industry participants, some of which may be competitors of the Debtor. The Debtor, and its directors, officers, members, and principals, waive any right to commence an action, suit, or proceeding or to make any demand, complaint, or claim against Northgate, its subsidiaries, affiliates, directors, officers, members, principals, or other personnel, that arises out of the right of Northgate or one of its related entities to advise or provide services to an industry competitor of the Debtor.

23. Any notice or communication sent with respect to this Agreement must be in writing and delivered via overnight mail (using a nationally recognized courier service) or by email:

<u>If to Debtor</u>:

Ephraim Diamond
Arbel Capital Advisors LLC
4 Waverly Place
Lawrence NY 11559

___

Northgate Real Estate Group | 1633 Broadway, 46th Floor, New York, NY 10019 | (212) 369-4000

**NORTHGATE**
REAL ESTATE GROUP

and

Isaac Nutovic
Law offices of Isaac Nutovic
261 Madison Avenue, 26th Floor
NY NY 10016
inutovic@nutovic.com

with a copy to the Senior Secured Lender at the address directly below:

If to Senior Secured Lender:

c/o Silver Heights Capital LLC
11 Chestnut Street, Suite 104
Norwalk, CT 06854
Attention: Legal Department
Email: legal@silverheightscap.com

with a copy to:

Kirby Aisner & Curley LLP
700 Post Road, Suite 237
Scarsdale, New York 10583
Email: eaisner@kacllp.com
Attn: Erica R. Aisner, Esq.

If to Northgate:

Northgate Real Estate Group
1633 Broadway, 46th Floor
New York, NY 10019
Attn: Greg Corbin
Email: greg@northgatereg.com

24. Signatures to this Agreement may be exchanged by hand, by mail, by fax, by photo. PDF or photocopy, or in counterparts; any such method being binding on both sides when completed and exchanged.

25. This Agreement is subject to approval of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). This paragraph will survive termination of this Agreement. This Agreement has been made under and will be governed by the laws of the State of New York, without giving effect to conflicts of law rules.

_____

Northgate Real Estate Group | 1633 Broadway, 46th Floor, New York, NY 10019 | (212) 369-4000

# NORTHGATE
REAL ESTATE GROUP

    If the foregoing accurately sets forth our Agreement, please sign below and return this original Agreement to Northgate. This Agreement contains the entire agreement between Debtor and Northgate. Any prior discussions and agreements between the parties concerning this subject matter are superseded by this Agreement. This Agreement will be deemed to have been jointly drafted by the parties and there will be no presumption in interpretation against either party as the drafter of this Agreement. The terms of this Agreement may not be modified or changed except by a writing signed by the parties. Each of Debtor and Northgate understands that this is a legal document, acknowledges that it has consulted with counsel of its choice regarding its terms before deciding whether to execute it, and agrees to the terms and conditions set forth herein.

| | |
|---|---|
| **52 Charlie LLC** | **Northgate Real Estate Group** |
| Name: Arbel Capital Advisors LLC<br>    By: Ephraim Diamond Managing Member | Greg Corbin |
| Title: Manager | President |
| Authorized signature: /s/ *Ephraim Diamond* | Authorized signature: _____ |
| Date: 12/31/2025 | Date: 12/31/2025 |

***Acknowledged and agreed to as of the date set forth below***:

**52 Charles Street Lending LLC**

By: /s/ *Seth Greenwald*
   Name: Seth Greenwald
  Title: Manager
  Date: 1/4/2026

---

Northgate Real Estate Group | 1633 Broadway, 46th Floor, New York, NY 10019 | (212) 369-4000