Law Offices of Isaac Nutovic                                  Hearing Date:
261 Madison Avenue, 26th Floor                               Hearing Time:
New York, New York 10016                                     Objection Deadline:
(917) 922-7963

Counsel to Debtor and Debtor in Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In Re:                                                        Chapter 11

    52 CHARLIE LLC,                                       Case No: 25-12915 (JPM)
                          Debtor.
------------------------------------------------------------X

## DEBTOR'S DISCLOSURE STATEMENT

### DISCLAIMER

THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT (THE "DISCLOSURE STATEMENT") IS INCLUDED HEREIN FOR THE PURPOSES OF SOLICITING ACCEPTANCES OF THE CHAPTER 11 PLAN OF LIQUIDATION, THE DEBTOR AND DEBTOR IN POSSESSION, DATED FEBRUARY      ,2026, AS MAY BE AMENDED, MODIFIED OR SUPPLEMENTED FROM TIME TO TIME (THE "PLAN"), AND MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN. A COPY OF THE PLAN IS ANNEXED HERETO AS **EXHIBIT "A"**. NO SOLICITATION OF VOTES TO ACCEPT OR REJECT THE PLAN MAY BE MADE EXCEPT PURSUANT TO SECTION 1125 OF TITLE 11 OF THE UNITED STATES CODE.

**THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR CONDITIONAL APPROVAL BUT HAS NOT BEEN GRANTED FINAL APPROVAL BY THE BANKRUPTCY COURT.**

**ALL HOLDERS OF CLAIMS ARE ADVISED AND ENCOURAGED TO READ THIS DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. THE PLAN SUMMARIES AND STATEMENTS MADE IN THIS DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN AND THE EXHIBITS ANNEXED TO THIS DISCLOSURE STATEMENT. IN THE EVENT OF ANY CONFLICTS BETWEEN THE DESCRIPTIONS SET FORTH IN THIS DISCLOSURE STATEMENT AND THE TERMS OF THE PLAN, THE TERMS OF THE PLAN SHALL GOVERN.**

THIS DISCLOSURE STATEMENT WAS PREPARED IN ACCORDANCE WITH SECTION 1125 OF TITLE 11 OF THE UNITED STATES CODE AND RULE 3016(b) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE, AND NOT NECESSARILY IN ACCORDANCE WITH OTHER NON-BANKRUPTCY LAW.

CERTAIN STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT, INCLUDING WITH RESPECT TO PROJECTED CREDITOR RECOVERIES AND OTHER FORWARD-LOOKING STATEMENTS ARE BASED ON ESTIMATES AND ASSUMPTIONS. THERE CAN BE NO ASSURANCE THAT SUCH STATEMENTS WILL BE REFLECTIVE OF ACTUAL OUTCOMES. FORWARD-LOOKING STATEMENTS ARE PROVIDED IN THIS DISCLOSURE STATEMENT PURSUANT TO THE SAFE HARBOR ESTABLISHED UNDER THE PRIVATE SECURITIES REFORM ACT OF 1995 AND SHOULD BE EVALUATED IN THE CONTEXT OF ESTIMATES, ASSUMPTIONS, UNCERTAINTIES, AND RISKS DESCRIBED HEREIN.

AS TO CONTESTED MATTERS AND OTHER ACTIONS OR THREATENED ACTIONS, THIS DISCLOSURE STATEMENT WILL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS. THIS DISCLOSURE STATEMENT ALSO WILL NOT BE CONSTRUED TO BE CONCLUSIVE ADVICE ON THE TAX, SECURITIES, OR OTHER LEGAL EFFECTS OF THE PLAN AS TO HOLDERS OF CLAIMS AGAINST, OR EQUITY INTERESTS IN, THE DEBTOR. EACH HOLDER OF A CLAIM OR EQUITY INTEREST IS URGED TO CONSULT WITH ITS OWN ADVISORS WITH RESPECT TO ANY TAX, SECURITIES, OR OTHER LEGAL EFFECTS OF THE PLAN ON SUCH HOLDER'S CLAIM OR EQUITY INTEREST.

THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN, AND THE DELIVERY OF THIS DISCLOSURE STATEMENT WILL NOT CREATE AN IMPLICATION THAT THERE HAS BEEN NO CHANGE IN THE INFORMATION STATED SINCE THE DATE HEREOF.

## I.
## INTRODUCTION

A.    **Description and History of the Debtor's Business Prior to the filing of the Chapter 11 Case.**

The Debtor is a New York limited liability corporation. 100% of the Debtor's membership interests were originally owned by Jacob Frumkin who passed away on February 3, 2025. The preliminary executors of his estate, Nicole Christine Frumkin and Samuel Frumkin, have since signed an Election to Continue Existence of Limited Liability Company.

The Debtor is the fee simple owner of 52 Charles Street New York, NY (the "Mortgaged Property"). The Mortgaged Property was acquired in December 2021 with the intention of developing it as a single unit residence. The Mortgaged Property is encumbered by a mortgage in favor of 52 Charles Street Lending LLC (the "Lender") in the approximate amount of $8 million. Development of the Mortgaged Property was halted mid-construction because of issues with the permitting process.

After Jacob Frumkin's death, the executors determined to sell the Mortgaged Property but were unable to obtain a price acceptable to the Lender. Faced with the possibility of the Lender commencing a foreclosure proceeding, the Debtor, with the support of the Lender, has filed this case with the intention of conducting an auction sale on an expedited basis.

The Debtor has not conducted business in any manner since Mr. Frumkin passed away.

**B.**     **Events During the Chapter 11 case.**

On December 29, 2025 (the "Petition Date"), the Debtor filed a voluntary petition (the "Petition") under Chapter 11 of the Bankruptcy Code.

The Debtor has taken the following actions during the course of this case:

-Provided documents to the United States Trustee and attended the Initial Debtor Interview;
-Opened a DIP bank account;
-Provided proof of insurance;
-Attended the section 341(a) Meeting of Creditors
-Filed the required schedules and local rule affidavits;
-Filed applications to retain counsel and a real estate broker;
-Filed a motion to sell the Mortgaged Property and applied for approval of bid procedures for the Mortgaged Property ("Mortgaged Property Sale Procedures").
-Filed monthly operating reports;
-Obtained a bar date order from the Court and served it on creditors;
--Filed its Plan and Disclosure Statement.

**C.**     **Voting Procedures**

As set forth in more detail in Article III of this Disclosure Statement, certain holders of Claims are entitled to vote to accept or reject the Plan. For each holder of a Claim entitled to vote, the Debtor has enclosed, along with a copy of this Disclosure Statement, a ballot and voting instructions regarding how to properly complete the ballot and submit a vote with respect to the Plan. Holders of more than one Claim will receive an additional ballot for each Claim. The individual ballots must be used to vote each individual Claim. For detailed voting instructions, please refer to the specific voting instructions and the ballot enclosed with this Disclosure Statement.

All completed ballots must be actually received no later than 5:00 p.m. (Eastern) on _____, 2026 (the "Voting Deadline") by regular mail, overnight mail, hand delivery, electronic mail, or facsimile to:

| **If by regular mail, overnight mail or hand delivery:** | **If by electronic mail:** | |
|---|---|---|
| Law Offices of Isaac Nutovic<br>261 Madison Avenue, 26th Floor<br>New York, New York 10016 | inutovic@nutovic.com | |

If you are a holder of a Claim that is entitled to vote on the Plan and you did not receive a ballot, received a damaged ballot or lost your ballot, or if you have questions concerning this Disclosure Statement, the Plan, or the procedures for voting with respect to the Plan, please contact Isaac Nutovic at inutovic@nutovic.com

**BALLOTS RECEIVED AFTER THE VOTING DEADLINE MAY NOT BE COUNTED.**

**D.**     **Summary of Distribution and Voting Eligibility**[1]

---

[1] This summary is qualified in its entirety by reference to the Plan. Statements as to the rationale underlying the treatment of Claims and Equity Interests under the Plan are not intended to, and will not, waive, compromise or limit any rights, claims,

The following summary table briefly outlines the classification and treatment of Claims and Equity Interests in the Debtor under the Plan, and the voting eligibility of the holders of such Claims and Equity Interests. Nothing set forth in the table below shall be deemed an admission by the Debtor as to the existence, validity, priority or amount of any claim asserted against the Debtor's Estate. All rights to object to Claims are fully reserved and preserved.

| Class | Designation | Treatment | Estimated Dollar Amount of Claims in Class[2] | Approximate Percentage Recovery | Entitled to Vote |
|---|---|---|---|---|---|
| Unclassified | Administrative Expense Claims | Paid In Full | Less than $5,000 | 100% | No |
| Unclassified | United States Trustee Fees | Paid In Full | Less than $80,000 | 100% | No |
| 1 | Senior Secured Claims | Paid In Full | $10,811.27 | 100% | No |
| 2 | 52 Charles Street Lending LLC | Paid to extent of available sale proceeds | $8,518,627 | Unknown | Yes |
| 3 | DL Restoration | Paid to extent of available sale proceeds | $164,000 | Unknown | Yes |
| 4 | SW Engineering | Paid to extent of available sale proceeds | $68,880 | Unknown | Yes |
| 5 | Unsecured Claims | Paid to extent of available sale proceeds | $ 403,483 | Unknown | Yes |
| 6 | Interests | Paid to extent of available sale proceeds | | Unknown | Yes |
| | | | | | |

In accordance with the section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, Professional Fee Claims, certain Priority Claims and United States Trustee Fees have not been classified. Section III of this Disclosure Statement provides a more detailed description of the treatment of Claims and Equity Interests under the Plan.

Pursuant to various provisions of the Bankruptcy Code, only classes of claims that are "impaired" under the terms and provisions of a plan are entitled to vote to accept or reject such plan.

---

defenses, or causes of action in the event that the Plan is not confirmed. You should read the Plan in its entirety before voting to accept or reject the Plan.

[2] The Debtor is approximating based on information available to it as of the date of this Disclosure Statement and makes no representation as to certainty of the approximated amounts which may be higher or lower. In approximating these amounts, the Debtor does not waive any rights, including all rights to object to Claims.

**E.**      **Confirmation Under Section 1129(b)**

The Bankruptcy Code permits confirmation of a Chapter 11 plan notwithstanding the rejection of such plan by one or more impaired classes of claims or equity interests. Under section 1129(b) of the Bankruptcy Code, a Chapter 11 plan may be confirmed by a bankruptcy court if it does not "discriminate unfairly" and is "fair and reasonable" with respect to each rejecting class.

If a Class of Claims entitled to vote on the Plan rejects the Plan, the Debtor reserves the right to amend the Plan or request confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code or both.

**F.**      **The Confirmation Hearing**

In accordance with section 1128 of the Bankruptcy Code, the Bankruptcy Court shall schedule a hearing, pursuant to a separate notice or order of the Bankruptcy Court, to consider confirmation of the Plan (the "Confirmation Hearing") before the Honorable John P. Mastando, III.

**The hearing to consider the final approval of the Disclosure Statement and confirmation of the Plan will take place before the Honorable John P. Mastando United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, on _____ at _____ a.m. or as soon thereafter as counsel may be heard. The Hearing shall be held via Zoom for Government. Parties wishing to appear at the Hearing, whether making a "live" or "listen only" appearance before the Court, must make an electronic appearance utilizing the Electronic Appearance portal located at the Court's website at: https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl. Appearances must be entered no later than _____ (the "Appearance Deadline"). After the Appearance Deadline has passed, parties who have made their electronic appearance through the Court's website to appear via Zoom for Government will receive an invitation from the Court with a Zoom link that will allow them to attend the Hearing. Requests to receive a Zoom link should not be emailed to the Court, and the Court will not respond to late requests that are submitted on the day of the hearing. Further information on the use of Zoom for Government can be found at the Court's website at https://www.nysb.uscourts.gov/ecourt-appearances.**

**G.**      **Important Dates**

Please take note of the following important dates and deadlines with respect to the Plan.

| Event | Date and Time |
| --- | --- |
| Voting Deadline | ****** , 2026 by 5:00 p.m. (Eastern) |
| Plan Confirmation Objection Deadline | ****** , 2026 by 5:00 p.m. (Eastern) |
| Ballot Summary Deadline | ****** , 2026 by 5:00 p.m. (Eastern) |
| Deadline to Reply to Plan Objections | ****** , 2026 by 5:00 p.m. (Eastern) |
| Hearing on Plan Confirmation | ****** , 2026 10:30 a.m. (Eastern) |

**II. THE PLAN**

DESIGNATION OF CLASSES

All Holders of Claims and Equity Interests against or in the Debtor, of whatever kind or nature, whether or not scheduled or liquidated, absolute or contingent, whether Allowed or not, shall be bound by the provisions of the Plan and are hereby classified as follows:

Class 1: Class 1 shall consist of the Allowed Senior Secured Claims

Class 2: Class 2 shall consist of the Allowed Secured Claim of 52 Charles Street Lending LLC

Class 3 shall consist of the Allowed Secured Claim of DL Restoration Corp.

Class 4: Class 4 shall consist of the Allowed Secured Claim of SW Engineering Corp.

Class 5: Class 5 shall consist of all Allowed Unsecured Claims

Class 6: Class 6 shall consist of all Allowed Equity Interests

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Priority Claims and United States Trustee Fees have not been classified and thus are excluded from the Classes.

SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1129 OF THE BANKRUPTCY CODE, FEDERAL RULE OF BANKRUPTCY PROCEDURE 3019 AND THIS PLAN, THE DEBTOR RESERVES THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE, OR WITHDRAW THIS PLAN PRIOR TO ITS EFFECTIVE DATE.

<u>TREATMENT OF UNCLASSIFIED CLAIMS</u>

As provided in Bankruptcy Code § 1123(a)(1), Administrative Claims, Priority  Tax Claims, and Professional Fee Claims are unclassified claims, not considered Impaired and not entitled to vote on the Plan, because they are automatically entitled to the specific treatment provided for them in the Bankruptcy Code. Treatment of these claims is provided below.

A.      Administrative Claims. Except to the extent that a Holder of an Allowed Administrative Claim and either the Debtor or Reorganized Debtor, as applicable, agree to less favorable treatment, each Holder of an Allowed Administrative Claim (other than Professional Fee Claims) will, in exchange for full and final satisfaction, settlement, release, and discharge of the Allowed Administrative Claim, be paid the full, or as otherwise agreed, unpaid amount of such Allowed Administrative Claim in Cash within thirty (30) days of the Effective Date or within thirty (30) days of the entry of a Final Order allowing any Administrative Claim that is objected to, provided, however, that Administrative Claims incurred by the Debtor in the ordinary course of business shall be paid in the ordinary course of business in accordance with applicable terms and conditions without further notice to or order of the Bankruptcy Court.

The amount of Administrative Claims is estimated at less than $5,000.  This amount represents the estimated amounts to be sought by the Debtor's attorney for disbursements expended on behalf of the Debtor.

B.      Statutory Fees. These are fees that are due to the United States Trustee pursuant to 28 U.S.C. section 1983. The Debtor estimates this amount at less than $70,000.

C.      Priority Claims. Except to the extent that a Holder of an Allowed Priority Claim agrees to less favorable treatment, in exchange for full and final satisfaction, settlement, release, and discharge of each Allowed Priority Claim, each Holder of an Allowed Priority Claim due and payable on or prior to the Effective Date shall receive either (i) the treatment set forth in section 1129(a)(9)(C) of the Bankruptcy Code, with payments over five (5) years with statutory interest; or (ii) payment in full within fourteen (14) days of the Effective Date.

The Debtor does not believe there are any Priority Claims which are not also Senior Secured claims which will be paid in full at Closing.

## TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

Classification and Treatment Generally. Pursuant to sections 1122 and 1123 of the Bankruptcy Code, set forth below is a designation of Classes of Claims and Interests, which are placed in a particular Class for all purposes under the Plan, including, without limitation, voting, confirmation, and receiving distributions under the Plan, as set forth herein.

4.01    Generally. Subject to Article VII hereof, each Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under the Plan the treatment described below in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, such Holder's Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to by the Debtor and the Holder of such Allowed Claim or Allowed Interest, as applicable.  Unless otherwise indicated, the Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the later of the Effective Date and the date such Holder's Claim or Interest becomes an Allowed Claim or Allowed Interest or as soon as reasonably practicable thereafter.

4.02    Class 1 – Senior Secured Claims.  The Class 1 Secured Claims are unimpaired and not entitled to vote on the Plan.

The New York City Department of Finance holds the only known claim in this Class which is in the approximate amount of $10,811.27.

The Class 1 Allowed Secured Claim shall be paid the full amount of its Claim in Cash on the Effective Date, except to the extent the Holder of such Claim agrees otherwise.

4.03    Class 2 –Lender Allowed Secured Claim.  Class 2 is Impaired.

(a)      In the event that, following implementation of the Mortgaged Property Sale Procedures, a credit bid by the Lender, or its designee, is determined to be the highest and/or best offer for the Mortgaged Property in accordance with the Mortgaged Property Sale Procedures, on the Effective Date, or as soon thereafter as may be practicable, and in full settlement and satisfaction of the Allowed Class 2 Secured Claim (but not full settlement and satisfaction of any remaining deficiency amount due to the Lender on the underlying obligation), the fee title interest in the Mortgaged Property shall be sold, transferred, conveyed and assigned to Lender or its designee, as of the Effective Date and otherwise being free and clear of any and all other existing Liens, Claims, encumbrances and interests of whatever kind or nature, *provided* that  Lender shall pay the Debtor, on the Effective Date, cash equal to the amount of all Allowed Administrative Claims (excluding any professional fee claims of the Law Offices of Isaac Nutovic which are for services) (ii) all statutory fees and (iii) Allowed Class 1 Claims (collectively, the "Confirmation Payment Amount").

(b)      In the event that, following implementation of the Mortgaged Property Sale Procedures, a Purchaser (other than Lender) is determined to have submitted the highest and/or best offer for the Mortgaged Property, on the Effective Date, or later as specified below, the Debtor shall: (i) sell, transfer, convey and assign the

Mortgaged Property to the successful Purchaser, with such sale, transfer, conveyance and assignment being free and clear of any and all other existing Liens, Claims, encumbrances and interests of whatever kind or nature, and (ii) shall, at closing of the Mortgaged Property Sale,  (A) pay or escrow the Confirmation Payment Amount; and (B) pay Lender in Cash until its Allowed Secured Claim is paid in full, all sums remaining from the Mortgaged Property Sale Proceeds after the Class 1 Claim(s) has been paid in full.

(c) For the avoidance of doubt, nothing contained in this Plan shall be deemed a modification, waiver, settlement or release of any kind with respect to Lender's claims against any non-debtor third party, including but not necessarily limited to, all guarantors of the underlying mortgage loan to the Debtor,

In accordance with Sections 363(k) and 1129 of the Bankruptcy Code, the Holder of the Class 2 Allowed Secured Claim shall retain its right to credit bid the full amount of its Allowed Secured Claim in connection with any such Mortgaged Property Sale.

The Class 2 Claim is in the amount of $8,518,627.

4.04     Class 3 – Allowed Secured Claim of DW Restoration Corp..  Class 3 is Impaired. The Holder of the Allowed Class 3 Claim is entitled to vote to accept or reject the Plan.

Class 3 consists of the Allowed Secured Claim of DW Restoration Corp against the Debtor. In full and final satisfaction of such Claim, on the Effective Date, or later as specified below, the Debtor shall: (i) sell, transfer, convey and assign the Mortgaged Property to the successful Purchaser, with such sale, transfer, conveyance and assignment being free and clear of any and all other existing Liens, Claims, encumbrances and interests of whatever kind or nature, and (ii) shall, at closing of the Mortgaged Property Sale,  (A) pay or escrow the Confirmation Payment Amount; and (B) pay the Holder of the Class 3 Claim in Cash until its Allowed Secured Claim is paid in full, all sums remaining from the Mortgaged Property Sale Proceeds after the Class 1 and Class 2 Claims have been paid in full.

The Class 3 Claim is in the approximate amount of $164,000.

4.05     Class 4 – Allowed Secured Claim of SW Engineering Corp.  Class 4 is Impaired. The Holder of Allowed Class 4 Claim  is entitled to vote to accept or reject the Plan.

Class 4 consists of the Allowed Secured Claim of SW Engineering Corp against the Debtor. In full and final satisfaction of such Claim, on the Effective Date, or later as specified below, the Debtor shall: (i) sell, transfer, convey and assign the Mortgaged Property to the successful Purchaser, with such sale, transfer, conveyance and assignment being free and clear of any and all other existing Liens, Claims, encumbrances and interests of whatever kind or nature, and (ii) shall, at closing of the Mortgaged Property Sale,  (A) pay or escrow the Confirmation Payment Amount; and (B) pay the Holder of the Class 3 Claim in Cash until its Allowed Secured Claim is paid in full, all sums remaining from the Mortgaged Property Sale Proceeds after the Class, 1 Class 2 and Class 3 Claims have been paid in full.

The Class 4 Claim is in the approximate amount of $68,880.

4.06     Class 5 - General Unsecured Claims.  Class 5 is Impaired.  Holders of Allowed Class 5 Claims are entitled to vote to accept or reject the Plan.

Each Holder of a Class 5 Allowed General Unsecured Claim, which shall include deficiencies on all Allowed Class 2, 3 and 4 Claims, shall receive the Mortgaged Property Sale Proceeds remaining after Class 1, Class 2, Class 3 and Class 4 Claims have been paid in full.

The Class 5 Claims are in the approximate amount of $403,483.

4.07 <u>Class 6</u> - <u>Interests</u>. Class 6 is Impaired.   The estate of Jacob Frumkin is the sole holder of interests in the Debtor. The Holder of Interests shall receive in full and final satisfaction, compromise, settlement, release, and discharge of each such Allowed Claim: (a) its Pro Rata Share of Mortgaged Property Sale Proceeds remaining after Class 1, Class 2, Class 3, Class 4 and Class 5 Claims have been paid in full and is entitled to vote to accept or reject the Plan.

On the Effective Date: (1) any certificate, share, note, bond, indenture, purchase right, or other instrument or document, directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest, equity, or portfolio interest in the Debtor or any warrants, options, or other securities exercisable or exchangeable for, or convertible into, debt, equity, ownership, or profits interests in the Debtor giving rise to any Claim or Interest shall be canceled and deemed surrendered as to the Debtor and shall not have any continuing obligations thereunder; and (2) the obligations of the Debtor pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificates or articles of incorporation or similar documents governing shares, certificates, notes, bonds, indenture, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtor shall be fully released, settled, and compromised, except with respect to any remaining obligation to wind up the affairs of the Debtor. However, in the event that the proceeds of the Mortgaged Property Sale are sufficient to pay all Allowed Claims in full, any remaining proceeds will be distributed to the Interest Holder.

## ACCEPTANCE OR REJECTION OF THE PLAN

A Class shall have accepted the Plan if it is accepted by at least 2/3 in dollar amount and more than 1/2 in number of the Allowed Claims in such Class (excluding Insiders) that have cast ballots with respect to the Plan. Only those votes cast by holders of Allowed Claims shall be counted in determining whether acceptances have been received in sufficient number and amount to obtain confirmation.

Under the Plan, Classes 2, 3, 4, 5 and 6 are impaired, and are eligible to vote on the Plan.

## IMPLEMENTING THE PLAN

The sole means for implementing the Plan is through an auction sale of the Mortgaged Property. The Plan is grounded in the determination by the Debtor that maximum recoverable value, and the creation of the funds required to make the Distributions provided for under the Plan is best achieved through a prompt and orderly implementation of a marketing process by which the Mortgaged Property is sold at auction following exposure to the marketplace. Toward that end, the Debtor has engaged Northgate Real Estate Group (the "<u>Mortgaged Property Broker</u>") to implement the Mortgaged Property Sale Procedures in the period leading up to the Confirmation Hearing, with a view toward (i) conducting an auction before the Confirmation Hearing Date (ii) obtaining approval of a sale of the Mortgaged Property on the Confirmation Hearing Date and consummating a sale of the Mortgaged Property within 30-60 days of the entry of an order approving the sale to a Purchaser.

The Debtor is attempting to establish a price floor for the auction by entering into a sale agreement before the auction (the "<u>Stalking Horse Agreement").</u>  The Stalking Horse Agreement will provide that in the event no higher and/or better offer for the Mortgaged Property is identified after the auction, the Mortgaged Property will be sold to the proposed purchaser, free and clear of all existing liens, claims, encumbrances and interests of whatever kind or nature.

The Mortgaged Property broker, working in conjunction with the Debtor, will implement the Mortgaged Property Sale Procedures in connection with the solicitation of bids for the Mortgaged Property and the conduct of any competitive bid auction in connection therewith.

Any fees, costs, or expenses incurred by the Mortgaged Property broker in connection with the marketing and sale of the Mortgaged Property, including any fees and/or commissions earned by the Mortgaged Property Broker and/or expenses incurred in implementing the Mortgaged Property Sale Procedures are to be paid at a closing of the sale of the Mortgaged Property as a buyer's premium in addition to the purchase price to be paid to the Debtor. The Plan further contemplates that upon its determination of the highest and/or best offer for the Mortgaged Property following implementation of the Mortgaged Property Sale Procedures, the Confirmation Order will authorize a sale of the Mortgaged Property to the purchaser offering the highest or best offer for the Mortgaged Property, free and clear of all liens, claims and encumbrances.

Plan Distributions. All payments to Allowed Claims shall be made from the Debtor's receipt of funds from the auction sale of the Mortgaged Property.

CORPORATE GOVERNANCE.

The Confirmation Order shall authorize: (a) the dissolution of the Debtor; and (b) the filing of a certificate of dissolution (or its equivalent) with the secretary of state or similar official of each jurisdiction of incorporation of the Debtor at such time as shall be determined appropriate by the Debtor. Until such time as the Debtor has been dissolved the Debtor shall continue to be managed by its Managing Member, Arbel Capital Advisors LLC.

SECTION 1146 EXEMPTION

In accordance with section 1146 of the Bankruptcy Code, (a)the issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under a plan confirmed under section 1129 or 1191 of this title, may not be taxed under any law imposing a stamp tax or similar tax. Accordingly, the transactions necessary to effectuate the Plan, including any necessary purchaser financing to consummate the sale of the Mortgaged Property under the Plan, will be exempt from such taxes.

ADMINISTRATIVE CLAIMS BAR DATE

A date establishing an Administrative Claims Bar Date will be included as part of the Confirmation Order or by separate Order, which will be served upon all creditors and other parties-in-interest. All requests for payment of Administrative Expenses that accrued on or before the Confirmation Date must be filed with the Bankruptcy Court by the Administrative Claims Bar Date, except for Professional Fee Claims. Except as otherwise provided herein, any holder of an Administrative Expense which fails to file a timely request for the payment of an Administrative Expense will forever be barred, estopped and enjoined from asserting such Administrative Expense against the Debtor and Reorganized Debtor. The Debtor may object to the allowance of any Administrative Expense Claim.

EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The Debtor has filed schedules indicating it has no executory contracts or unexpired leases. Nevertheless, if in the course of the auction process a bidder uncovers some contract it wishes to assume as part of its bid, the Debtor will assign such contract to the bidder as part of the purchase price.

A.       Assumption and Rejection of Executory Contracts and Unexpired Leases. In  order  to  facilitate

the sale, transfer and conveyance of the Mortgaged Property, the Plan constitutes and incorporates a motion by the Debtor, in accordance with Section 365 of the Bankruptcy Code, (a) to assume and assign to the Purchaser (or its designee) those executory contracts and unexpired leases that are designated and identified for assumption by the Purchaser as part of the sale of the Mortgaged Property, a schedule of which contracts/leases, if any, shall be included in a plan supplement to be filed no later than 14 days before the Confirmation Hearing. The Confirmation Order shall represent and reflect an order of the Bankruptcy Court approving such assumptions and assignments or rejection as of the Effective Date. In the event any counterparty to an executory contract and/or unexpired lease believes that there is outstanding any pre-petition or post-petition monetary amount under such contract or lease that must be cured as a condition to assumption and assignment under Section 365 of the Bankruptcy Code, any such cure claim must be filed with the Bankruptcy Court and served on counsel to the Debtor not later than seven (7) days prior to the Confirmation Hearing.

B      General Rejection. The Plan also constitutes and incorporates a motion by the Debtor, in accordance with Section 365 of the Bankruptcy Code, to reject any executory contract and/or unexpired lease that is not specifically designated and identified for assumption by the Purchaser as part of the sale of the Mortgaged Property.

## DISTRIBUTIONS

A.      Reorganized Debtor to Make Distributions. Unless ordered otherwise in the Confirmation Order, the Reorganized Debtor shall make all payments required by this Plan.

B      Unclaimed Property.  Any Holder of an Allowed Claim that does not assert a Claim pursuant to this Plan for an undeliverable or unclaimed distribution within 60 days after the first distribution is made to such Holder shall be deemed to have forfeited its claim for such undeliverable or unclaimed distribution and shall be forever barred and enjoined from asserting any such claim for the undeliverable or unclaimed distribution against the Debtor, the Estate, the Debtor, or their respective properties or assets.  In such cases, any Cash or other property held by the Debtor on account of such claims for undeliverable or unclaimed distributions, shall become the property of Debtor notwithstanding any federal or state escheat laws to the contrary. The Debtor and his or her respective agents and attorneys are under no duty to take any action to attempt to locate any Claim Holder.

C.      No post-petition interest shall accrue or be paid on any Unsecured Claim unless required by applicable law, statute or order of the Bankruptcy Court.

## EXCULPATION, INJUNCTION, AND RELATED PROVISIONS

The Debtor will not receive a discharge pursuant to section 1141(d) of the Bankruptcy Code.

1. Term of Injunctions or Stays. Unless otherwise provided in the Plan or the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

9.02      Injunction. The following provisions shall apply and shall be fully set forth in the

Confirmation Order.

**(a)   Injunctions Against Interference with Consummation or Implementation of Plan. All holders of Claims or Interests shall be enjoined from commencing or continuing any judicial or administrative proceeding or employing any process against the Debtor or the Estate with the intent or effect of interfering with the consummation or implementation of this Plan or the transfers, payments or Distributions to be made hereunder.**

**(b)   Plan Injunction. To the fullest extent authorized or provided by the Bankruptcy Code, except as otherwise specifically provided for by this Plan, as and from the Effective Date, all Persons shall be enjoined from (i) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order; (ii) the creation, perfection or enforcement of any Encumbrance of any kind; (iii) the commencement or continuation of any action, employment of process or act to collect, offset or recover any Claim or Cause of Action satisfied, released or enjoined under this Plan; and/or (iv) the assertion of any right of setoff, counterclaim, exculpation, or subrogation of any kind, in each case against the property of the Debtor or the Estate**

**(c)   No Bar to Claims Against Third Parties. Holders of Claims or Interests against the Debtor are not barred or otherwise enjoined by the Plan from pursuing any recovery against Persons that are not the Debtor in accordance with the terms set out herein in Article IX of this Plan.**

**(d)   Exculpation for Debtor and Estate and its Professionals.**

**To the maximum extent permitted by applicable law, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from, any Claim, Interest, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, loss, remedy, or liability for any claim, arising on or after the Petition Date and prior to or on the Effective Date, in connection with or arising out of the commencement, filing or administration of the Chapter 11 Case; the operation and marketing of the Debtor's Property during the Chapter 11 Case; the negotiation, formulation, filing, prosecution and pursuit of the sale of the Mortgaged Property; the negotiation, formulation, filing, prosecution, pursuit, and approval of the Disclosure Statement, the Mortgaged Property Sale Procedures and this Plan, or the solicitation of votes for, or confirmation of, this Plan; the funding of this Plan; the occurrence of the Effective Date; the administration of this Plan or the property to be distributed under this Plan; or the transactions in furtherance of any of the foregoing; except for Claims or Causes of Action arising out of or related to any act or omission of an Exculpated Party that is judicially determined in a Final Order to constitute bad faith, criminal conduct, intentional fraud, gross negligence, or willful misconduct, but in all respects such entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan. To the extent permitted by section 1125(e) of the Bankruptcy Code, the Exculpated Parties and each of their respective affiliates, agents, directors, officers, employees, advisors, and attorneys have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distribution of securities pursuant to this Plan and,**

**therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan, including the issuance of Securities thereunder. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability. This clause shall not apply to any malpractice claims which may be asserted by the Debtor against its attorneys.**

**Exculpated Parties means, solely in their capacities as such: (a) the Debtor and the Estate; (b) the Debtor's directors, officers, and managing members; (c) the Professionals; and (d) with respect to each of the foregoing Entities in clauses (a) through (c), such Entities' successors and assigns.**

**To the full extent permitted by section 1125(e) of the Bankruptcy Code, the Debtor, and each of its current members, managers, officers employees and professionals, their respective officers, directors, employees and professionals (including professional firms and individuals within such firms), shall neither have nor incur any liability to any Person for any act taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, implementation, administration, funding, confirmation or consummation of the Plan, the Disclosure Statement, or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan, or any act taken or omitted to be taken during the Bankruptcy Case, except for (i) acts or omissions as a result of willful misconduct or gross negligence and (ii) liability for any debt owed to the United States Government, any state, city or municipality arising under (a) the Internal Revenue Code or any state, city or municipal tax code, (b) the environmental laws of the United States or any state, city or municipality, (c) laws regarding the regulation of securities administered by the SEC or (d) any criminal laws of the United States, any state, city or municipality. From and after the Effective Date, a copy of the Confirmation Order and the Plan shall constitute, and may be submitted as, a complete defense to any Claim or liability released pursuant to the Plan.**

CONDITIONS TO EFFECTIVENESS OF THE PLAN

The Effective Date of the Plan does not occur until the later of: (i) the fifteenth (15th) calendar day following the Confirmation Date, (ii) the expiration of any and all applicable time periods within which such order may be appealed by any party or, if such order shall be appealed by any party, the date that any such appeal(s) has/have been dismissed or denied and that no further appeal may be taken, (iii) the date on which all conditions to effectiveness of the Plan have been satisfied or waived in accordance with the terms of the Plan and (iv) the date of the closing of the Mortgaged Property Sale.

The Debtor may waive any condition to confirmation or the Effective Date, in whole or in part, at any time without notice, an order of the Bankruptcy Court, or any further action other than

proceeding to confirmation and consummation of the Plan.

## RETENTION OF JURISDICTION

The Bankruptcy Court shall retain and have subject matter jurisdiction over any matter arising under the Bankruptcy Code, or arising in, out of, or related to thisChapter 11 Case and the Plan.

**III**
**REQUIREMENTS FOR CONFIRMATION OF THE PLAN**

A.     Confirmation Hearing

The Bankruptcy Code requires that the Bankruptcy Court, after notice, hold a hearing to consider confirmation of the Plan. The Confirmation Hearing shall be scheduled by the Bankruptcy Court to be held before the Honorable James P. Mastando III. The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement made at the Confirmation Hearing.

B.     Objections to Confirmation

The Bankruptcy Court has directed that objections, if any, to Confirmation of the Plan be in writing, filed with the Bankruptcy Court with a courtesy copy to Chambers of the Honorable James P. Mastando III, with proof of service and such objections served on or before such date as set forth in an additional notice or Order of the Bankruptcy Court. Objections must be served upon: (i) counsel to the Debtor, Law Offices of Isaac Nutovic 261 Madison Avenue, 26th Floor, New York, 10016; and (ii) the Office of the United States Trustee, Alexander Hamilton Custom House, One Bowling Green, Room 510, New York, New York 10004, Attn.: Annie Wells, Esq.. Objections to confirmation of the Plan are governed by Bankruptcy Rule 9014.

C.     Acceptance of the Plan

Acceptance of the Plan requires that each impaired Class of Claims accepts the Plan, with certain exceptions discussed below. Thus, acceptance of the Plan is tested on a class-by-class basis. Classes of Claims that are not impaired under the Plan are deemed to have accepted the Plan. Under the Plan, all of the classes are unimpaired, not entitled to vote and are presumed to have accepted the Plan.

D.     Confirmation of the Plan

In order to confirm the Plan, the Bankruptcy Code requires that the Bankruptcy Court make a series of determinations concerning the Plan, including: (i) that the Plan has classified Claims in a permissible manner; (ii) that the contents of the Plan comply with the technical requirements of the Bankruptcy Code; (iii) that the Plan has been proposed in good faith; and (iv) that disclosures concerning the Plan have been made which are adequate and include information concerning all payments made or promised in connection with the Plan and the Case. The Debtor believes that all of these conditions have been or will be met.

**IV**
**ALTERNATIVES TO THE PLAN AND OTHER CONSIDERATIONS**

A.      <u>Alternatives to the Plan</u>

The Debtor believes that the Plan provides creditors with the earliest and greatest possible value that can be realized on their respective Claims. The principal alternatives to confirmation of the Plan are: (i) confirmation of alternative plans submitted by another party in interest; or (ii) conversion of the Case to Chapter 7 of the Bankruptcy Code.

In this case, no other party filed an alternative plan.

The Debtor believes that a conversion to Chapter 7 would not be in the best interest of creditors. As described in section B below (the "<u>Best Interests of Unsecured Creditors</u>"), liquidation of the Debtor's assets under Chapter 7 of the Bankruptcy Code would not generate a greater distribution to creditors than proposed under the Plan. Conversion under Chapter 7 of the Bankruptcy Code would also entail the appointment of a Chapter 7 trustee and the incurring of additional administrative fees and expenses, which would adversely affect any distributions to Claimants.

The Debtor believes that confirmation of the Plan is preferable to the alternatives described above because the Plan will yield the greatest distributions to holders of Allowed Claims.

The cost of converting the Chapter 11 Case to one under Chapter 7 would include the fees of a Chapter 7 trustee, as well as those of the Chapter 7 trustee's counsel and other professionals that may be retained by the Chapter 7 trustee, unpaid expenses incurred during the Chapter 11 Case. These Claims, and such other Claims as might arise in the liquidation or result from the Debtor's Chapter 11 Case, would be paid from the Debtor's assets before its assets would be available to pay Allowed Unsecured Claims resulting in substantially less of a recovery by the Chapter 7 trustee for the creditors of this estate.

THE DEBTOR BELIEVES THAT THE PLAN PROVIDES THE GREATEST AND EARLIEST POSSIBLE RECOVERY ON ACCOUNT OF CLAIMS AND THAT CONFIRMATION OF THE PLAN IS IN THE BEST INTERESTS OF CREDITORS.

B.      <u>Liquidation Analysis</u>

Liquidation Analysis: As part of the Chapter 11 process, section 1129(a)(7) of the Bankruptcy Code requires that a Bankruptcy Court determine that a Chapter 11 plan provides, with respect to each class, that each holder of a claim or an equity interest in such class either (i) has accepted the plan or (ii) will receive under the plan value that is not less than the amount that such holder would receive if the debtor had liquidated under Chapter 7 of the Bankruptcy Code.

In a chapter 7 case a trustee would be appointed to sell the Debtor's assets much in the same fashion as being done under the Plan. However, the results for creditors would be

16

substantially inferior for the following reasons: The fees of a Chapter 7 trustee, as well as those of the Chapter 7 trustee's counsel and other professionals that may be retained by the Chapter 7 trustee would be an added expense which would have to be paid prior to a recovery by creditors. An additional cost of selling the Mortgaged Property in a chapter 7 case are the New York transfer and recording taxes due upon the sale of the Mortgaged Property which do not have to be paid if a chapter 11 plan is confirmed.

The Debtor does not believe that there are any avoidance actions which could be brought here to augment the estate. Recoveries of avoidance actions will be no different in a chapter 7 case than here where the Debtor is not intending to bring any avoidance actions. The main reason there are no avoidance actions is that the Debtor has had no funding or income for at least 4 years.

The Debtor believes that the plan provides the greatest and earliest possible recovery on account of claims and that confirmation of the plan is in the best interests of creditors.

## V
## ADDITIONAL INFORMATION

Requests for information and additional copies of this Disclosure Statement, the Plan, and any other materials or questions relating to the Plan and this Disclosure Statement should be directed to the Debtor's counsel, Law Offices of Isaac Nutovic, 261 Madison Avenue, 26th Floor New York NY 10016, or by email to: inutovic@nutovic.com.

## VI
## TAX CONSEQUENCES

Creditors should consult with their own tax advisor concerning any tax related implications and: (i) any deductions which may be applicable to them as bad debt deductions, or (ii) income tax implications based upon forgiveness of debt, if applicable, based upon the provisions of the Plan.

Pursuant to IRS Circular 230 Notice: To ensure compliance with IRS Circular 230, holders of Claims or Equity Interests are hereby notified that: (i) any discussion of U.S. federal tax issues contained or referred to in this Disclosure Statement is not intended or written to be used, and cannot be used, by holders of Claims or Equity Interests for the purpose of avoiding penalties that may be imposed on them under the Tax Code; (ii) such discussion is written in connection with the promotion or marketing by the Debtor, on behalf of the Debtor's Estate, of the transactions or matters addressed herein; and (iii) holders of Claims or Equity Interests should seek advice based upon their particular circumstances from an independent tax advisor.

## VII

## RISK FACTORS, FEASIBILITY AND ESTIMATED RECOVERY

The Debtor believes there is little risk that the auction will not take place or that the Property will not be sold. The auction procedures the Debtor has set in motion have been successfully utilized many times.  There is only a small risk that the auction will not result in the

17

sale of the property. Any bidder will have to put up a deposit to secure its obligations and the auction procedures provide for a backup bidder to fill the shoes of any successful bidder that fails to close on time. Since there is no floor for any bidding and the property does not have unusual problems there is no doubt that there will be some bid for the Property. There is also virtually no risk that the plan will fail as unfeasible since it provides for a liquidation of the Property to the highest bidder. Because no appraisal of the Property was done in its current state and the Debtor is unaware of any sales of comparable property, the Debtor can only guess at what the results of an auction sale might be. It is possible that creditors other than the Lender may receive no recovery.

## RECOMMENDATION OF THE DEBTOR

The Plan and this Disclosure Statement were drafted and submitted on behalf of the Debtor with the belief that it affords creditors the best possible recovery. As such, the Debtor strongly supports the Plan and believes creditors should vote in favor of its confirmation.

Dated: March 12, 2026
        New York, New York

                                        Law Offices of Isaac Nutovic

                            By:     s/ *Isaac Nutovic*
                                    Isaac Nutovic Esq.
                                    261 Madison Avenue, 26th Floor
                                    New York, N.Y. 10016

                                    *Counsel for the Debtor and*
                                    *Debtor-In-Possession*

                                    52 Charlie LLC
                                    By Arbel Capital Advisors LLC

                            By:     ___/s/_____
                                    Ephraim Diamond, Managing Member
                                    52 Charlie LLC

# Exhibit A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------x
In re:

     52 CHARLIE LLC,

        Debtor.
--------------------------------------------------------x

Chapter 11
Case No.  25-12915 (JPM)

## FIRST AMENDED PLAN OF LIQUIDATION FOR 52 CHARLIE LLC

> **NOTHING CONTAINED HEREIN SHALL CONSTITUTE AN OFFER, ACCEPTANCE, COMMITMENT, OR LEGALLY BINDING OBLIGATION OF THE DEBTOR OR ANY OTHER PARTY IN INTEREST.  YOU SHOULD NOT RELY ON THE INFORMATION CONTAINED IN, OR THE TERMS OF, THIS PLAN FOR ANY PURPOSE PRIOR TO THE CONFIRMATION OF THIS PLAN BY THE BANKRUPTCY COURT.  THIS PLAN IS SUBJECT TO APPROVAL BY THE BANKRUPTCY COURT AND OTHER CUSTOMARY CONDITIONS.  THIS PLAN IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES.**

LAW OFFICES OF ISAAC NUTOVIC
261 Madison Avenue
26th Floor
New York, N.Y. 10016

*Attorneys for Debtor,*
52 Charlie LLC

Dated: March 13, 2026

<u>**PLAN OF LIQUIDATION FOR 52 CHARLIE LLC**</u>

<u>**INTRODUCTION**</u>

This Plan of Liquidation undertakes to resolve all secured claims, administrative and other priority claims, and unsecured claims, as well as all equity interests in the Debtor. The Debtor believes that distribution pursuant to the terms of this Plan will produce for creditors more than they would receive if the Chapter 11 case was to be converted and the assets of Debtor were to be liquidated under Chapter 7 of the Bankruptcy Code and the proceeds distributed according to the priorities and in the manner prescribed by the Bankruptcy Code. Reference is made to the Disclosure Statement accompanying the Plan for a discussion of the Debtor's history, business, property, and risk factors, a summary and analysis of the Plan, and certain related matters. The Debtor is the proponent of the Plan within the meaning of Section 1129 of the Bankruptcy Code.

ALL CREDITORS ARE ENCOURAGED TO READ THE PLAN AND THE ACCOMPANYING DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 3019, AND THE PLAN, THE DEBTOR RESERVES THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE OR WITHDRAW THE PLAN PRIOR TO ITS SUBSTANTIAL CONSUMMATION.

**ARTICLE I**

**DEFINED TERMS, RULES OF INTERPRETATION,**
<u>**COMPUTATION OF TIME, AND GOVERNING LAW**</u>

A.      <u>**Defined Terms**</u>.

The following terms when used in the Plan and in the accompanying Disclosure Statement shall, unless the context otherwise requires, have the following meanings, respectively:

1.1.      *"Administrative Claim"* shall mean a Claim under Section 503(b) of the Bankruptcy Code that is entitled to priority under Section 507(a)(2) of the Bankruptcy Code, for costs or expenses of administration of the Debtor's Chapter 11 Case, including, without limitation, any actual and necessary expenses of operating the business of the Debtor or preserving the Debtor's estate, and any and all fees and expenses of Professionals retained in the Debtor's Estate to the extent allowed by the Bankruptcy Court under Sections 330, 331 or 503 of the Bankruptcy Code.

1.2.      *"Administrative Claims Bar Date"* shall mean the date by which all Administrative Claims must be filed with the Bankruptcy Court to be an Allowed Claim. The Administrative Claims Bar Date will be established by the Bankruptcy Court as a specific date prior to the Confirmation Date.

1.3.      "*Affiliate*" shall have the meaning set forth in section 101(2) of the Bankruptcy Code.

1.4.      *"Allowed Administrative Claim"* shall mean all or that portion of any Administrative Claim that has been or becomes an Allowed Claim by Order of the Bankruptcy Court.

1.5.      *"Allowed Claim"* or **"***Allowed [      ] Claim"* means with respect to any Claim, except as otherwise provided herein: (a) a Claim that is evidenced by a Proof of Claim timely Filed by the Bar Date (or for which Claim under the Plan, the Bankruptcy Code, or a Final Order of the Court a Proof of Claim is not or shall not be required to be Filed); (b) a Claim that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim has been timely filed; or (c) a Claim Allowed pursuant to the Plan, any stipulation approved by the Court, any contract, instrument, indenture, or other agreement entered into or assumed in connection with the Plan, or a Final Order of the Court;

provided, that with respect to a Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if and to the extent that with respect to such Claim no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Court, or if such an objection is so interposed, such Claim shall have been Allowed by a Final Order.  Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim or Interest is or has been timely Filed, is not considered Allowed and shall be expunged without further action by the Debtor and without further notice to any party or action, approval, or order of the Court.  Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes.  For the avoidance of doubt, a Proof of Claim Filed after the applicable Bar Date shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-Filed Claim.  "Allow" and "Allowing" shall have correlative meanings.

1.6.     *"Avoidance Actions"* means any and all Causes of Action which a trustee, debtor in possession, the estate or other appropriate party in interest, including the Debtor or an assignee of the Debtor, may assert under Sections 502, 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, or 553 of the Bankruptcy Code (other than those which are released or dismissed as part of and pursuant to the Plan) or under other similar or related state or federal statutes or common law, including fraudulent conveyance laws.

1.7.     *"Ballot"* shall mean the form(s) distributed to each Holder of a Claim in an impaired Class entitled to vote hereon, on which is to be indicated the acceptance or rejection of the Plan.

1.8.     *"Ballot Date"* shall mean the date set by the Bankruptcy Court by which all votes for acceptance or rejection of the Plan must be received by the Balloting Agent.

1.9.     *"Balloting Agent"* means Law Offices of Isaac Nutovic, counsel to the Debtor.

1.10.     "*Bankruptcy Code*" shall mean the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq., and all amendments thereto which are applicable to the Debtor's Chapter 11 case.

1.11.     *"Bankruptcy Court"* shall mean the United States Bankruptcy Court for the Southern District of New York, or such other ccourt as may hereafter have jurisdiction over an action with respect to the Chapter 11 Case.

1.12.     *"Bankruptcy Rules"* means: (a) the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended and promulgated under section 2075 of Title 28, United States Bankruptcy Code; (b) the Federal Rules of Civil Procedure, as amended and promulgated under Section 2072 of Title 28, United States Bankruptcy Code; (c) any local rules applicable to the Bankruptcy Court; and (d) any standing orders governing practice and procedure issued by the Bankruptcy Court, each as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to the Debtor's Chapter 11 case or proceedings therein, as the case may be.

1.13.     "*Bar Date*" means the dates established by the Bankruptcy Court by which Proofs of Claim must be Filed.

1.14.     *"Business Day"* shall mean a day other than a Saturday or a Sunday or any other day on which the majority of commercial banks located in New York, New York are required or authorized to close.

22

1.15.    *"Cash"* shall mean currency of the United States of America, or checks issued in accordance with this Plan payable in such currency.

1.16.    "*Cash Consideration*" means any proceeds paid or payable in Cash, if any, by a Purchaser in connection with the  Mortgaged Property Sale; provided, however, that, for the avoidance of doubt, Cash Consideration includes any Cash or Cash equivalents returned (whether before or after the Effective Date) to the Debtor or the Estate, including (a) the return of any deposits of Cash or Cash equivalents and (b) the release of Cash or Cash equivalents used to collateralize any of the Debtor's insurance policies or utility contracts.

1.17.    *"Causes of Action"* means any claims, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, in tort, law, equity, or otherwise.  Causes of Action also include: (a) all rights of setoff, counterclaim, or recoupment and claims on contracts or for breaches of duties imposed by law; (b) the right to object to or otherwise contest Claims or Interests; (c) claims pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code; and (d) such claims and defenses as fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code.

1.18.    "*Chapter 11 Case*" means when used with reference to the Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

1.19.    *"Claim"* shall have the meaning set forth in Section 101(5) of the Bankruptcy Code, and any Cause of Action or liability asserted against the Debtor.

1.20.    "*Claims Register*" means the official register of Claims maintained by the Clerk of the Bankruptcy Court.

1.21.    "*Claims Reserve*" means the amount required to be available for distribution to the Holders of a Claim as to which the Debtor has interposed an objection.

1.22.    *"Class"* shall mean such classes of Claims or Interests which are substantially similar to the other Claims or Interests in such class as classified pursuant to the Plan.

1.23.    *"Confirmation Date"* means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the official docket maintained by such Clerk of the Bankruptcy Court in the Debtor's Chapter 11 case, within the meaning of Bankruptcy Rules 5003 and 902.

1.24.    *"Confirmation Order"* shall mean the order of the Bankruptcy Court, *inter alia*, confirming the Plan in accordance with the provisions of the Bankruptcy Code and which is in form and substance satisfactory to the Debtor, in its sole discretion.

1.25.    *"Confirmation Payment Amount"* means the amount equal to the sum of (i) all Allowed Administrative Claims excluding any professional fee claims of the Law Offices of Isaac Nutovic which are for services, but including any breakup fee to which a Stalking Horse Bidder is entitled (ii) all statutory fees and (iii) Allowed Senior Secured Claims.

1.26.    *"Creditor"* shall have the meaning as set forth in Section 101(10) of the Bankruptcy Code.

1.27.    *"Debtor"* means 52 Charlie, LLC, debtor and debtor in possession.

1.28.     *"Disallowed"* means, with respect to any Claim, a Claim or any portion thereof that:  (a) has been disallowed by a Final Order; (b) is Scheduled as zero or as contingent, disputed, or unliquidated and as to which no Proof of Claim or request for payment of an Administrative Claim has been timely Filed or deemed timely Filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely Filed under applicable law or the Plan; (c) is not Scheduled and as to which no Proof of Claim or request for payment of an Administrative Claim has been timely Filed or deemed timely Filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely Filed under applicable law or the Plan; (d) has been withdrawn by agreement of the applicable Debtor and the Holder thereof; or (e) has been withdrawn by the Holder thereof.

1.29.     *"Disclosure Statement"* shall mean the Disclosure Statement approved by the Bankruptcy Court as containing adequate information in accordance with Section 1125 of the Bankruptcy Code, all exhibits and annexes thereto and any amendments or modifications thereof.

1.30.     *"Disclosure Statement Order"* means the order entered by the Bankruptcy Court approving the Disclosure Statement.

1.31.     *"Disputed Claim"* shall mean a Claim against the Debtor which is subject to a pending objection, but has not been disallowed by a Final Order of the Bankruptcy Court.

1.32.     *"Distribution"* shall mean the distribution to the Holders of Allowed Claims in accordance with the terms of the Plan.

1.33.     *"Distribution Agent"* means the Debtor, or any other Entity the Debtor selects to make or facilitate Distributions that are to be made pursuant to the Plan.

1.34.     *"Distribution Date"* shall mean the date on which the initial Distribution(s) under the Plan are made, which date shall be not less than fourteen (14) days following the Effective Date, or as soon as practicable thereafter as determined by the Debtor.

1.35.     *"Distribution Record Date"* means the date for determining which Holders of Claims are eligible to receive Distributions hereunder and shall be the Effective Date or such other date as may be designated by the Bankruptcy Court in the Confirmation Order.

1.36.     *"Effective Date"* shall be the later of: (i) the fifteenth (15th) calendar day following the Confirmation Date, (ii) the expiration of any and all applicable time periods within which such order may be appealed by any party or, if such order shall be appealed by any party, the date that any such appeal(s) has/have been dismissed or denied and that no further appeal may be taken, (iii) the date on which all conditions to effectiveness of the Plan have been satisfied or waived in accordance with the terms of the Plan and (iv) the date of the closing of the Mortgaged Property Sale.

1.37.     *"Entity"* shall have the meaning set forth in section 101(15) of the Bankruptcy Code.

1.38.     *"Estate"* means, as to the Debtor, the estate created for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

1.39.     *"File,"* *"Filed,"* or *"Filing"* means file, filed, or filing in the Chapter 11 Case with the Bankruptcy Court or, with respect to the filing of a Proof of Claim or proof of Interest, the Clerk of the Bankruptcy Court.

1.40.     *"Final Order"* means (i) an order or judgment of the Bankruptcy Court, as entered on the docket in any Chapter 11 Case (or any related adversary proceeding or contested matter) or the docket of any other court of competent jurisdiction, or (ii) an order or judgment of any other court having jurisdiction over any appeal from (or petition seeking certiorari or other review of) any order or judgment entered by the Bankruptcy Court (or any other court of competent jurisdiction, including in an appeal taken) in the Chapter 11 Case (or in any related adversary proceeding or contested matter), in each case that has not been reversed, stayed, modified, or amended, and as to which the time to appeal, or seek certiorari or move for a new trial, reargument, or rehearing has expired according to applicable law and no appeal or petition for certiorari or other proceedings for a new trial, reargument, or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be timely Filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice; provided, that the possibility a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or the Local Bankruptcy Rules of the Bankruptcy Court, may be filed relating to such order shall not prevent such order from being a Final Order.

1.41.     "*General Unsecured Claim*" means any Claim, other than (a) an Administrative Claim, (b) a Secured Claim, (c) a Senior Secured Claim, (d) a Priority Claim, or (e) a Junior Secured Claim.

1.42.     "*Holder*" means an Entity holding a Claim or Interest, as applicable.

1.43.     "*Impaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

1.44.     *"Interest(s)"* means any and all equity interests, ownership interests or shares in the Debtor issued by the Debtor prior to the Petition Date (including, without limitation, all capital stock, stock certificates, common stock, preferred stock, partnership interests, membership and other interests in a limited liability company, rights, options, warrants, contingent warrants, convertible or exchangeable securities, investment securities, subscriptions or other agreements and contractual rights to acquire or obtain such an interest or share in the Debtor, partnership interests in the Debtor's stock appreciation rights, conversion rights, repurchase rights, redemption rights, dividend rights, preemptive rights and liquidation preferences, puts, calls or commitments of any character whatsoever relating to any such equity, ownership interests or shares of capital stock of the Debtor or obligating the Debtor to issue, transfer or sell any shares of capital stock) whether or not certificated, transferable, voting or denominated "stock" or a similar security, and any Claim or Cause of Action related to or arising from any of the foregoing.

1.45.     *"Junior Secured Claim"* means any Allowed Secured Claim (other than claims arising under the Prepetition Mortgage) with a lien priority junior to that of the Prepetition Mortgage.

1.46.     *"Lender"* means 52 Charles Street Lending LLC the Holder of the Pre-petition Mortgage.

1.47.     *"Lien"* shall mean any mortgage, lien, charge, security interest, encumbrance, or other security device of any kind affecting any asset or property of the Debtor but only to the extent that such interest is recognized as valid by a court of competent jurisdiction if the validity or scope of such interest is challenged by any party with standing to bring such a challenge.

1.48.     *"Manager"* shall mean the manager of the Debtor, Arbel Capital Advisors LLC.

25

1.49.    *"Mortgaged Property"* means collectively, that certain improved real property located at 52 Charles Street, New York, New York, and all of the Debtor's personal property related thereto or associated therewith.

1.50.    *"Mortgaged Property Broker"* means Northgate Real Estate Group the commercial real estate brokerage firm engaged by the Debtor to market and sell the Mortgaged Property per the terms of the Bidding Procedures, and otherwise in accordance with the terms of the Mortgaged Broker Engagement Agreement.

1.51.    *"Mortgaged Property Broker Engagement Agreement"* shall mean that certain engagement agreement, dated as of January    2026 that shall govern the Debtor's engagement of the Mortgaged Property Broker.

1.52.    *"Mortgaged Property Sale"* shall mean the conveyance of the Debtor's right, title and interest in the Mortgaged Property, subject to the terms of the Mortgaged Property Sale Procedures, this Plan and the Confirmation Order.

1.53.    *"Mortgaged Property Sale Procedures"* shall mean the sale and competitive bid/auction procedures to be implemented by the Mortgaged Property Broker in conjunction with the Debtor, in pursuit of a sale or other disposition of the Mortgaged Property in accordance with the Plan.

1.54.    *"Mortgaged Property Sale Proceeds"* shall mean the Cash or other proceeds realized by the Estate from a sale or other disposition of the Mortgaged Property in accordance with the terms of this Plan.

1.55.    *"Order"* shall mean a determination, decree, adjudication, or judgment issued or entered by the Bankruptcy Court or other court of competent jurisdiction.

1.56.    *"Person"* shall mean an individual, corporation, limited liability company, partnership, joint venture, trust, estate, unincorporated organization, or a government or any agency or political subdivision thereof.

1.57.    *"Petition Date"* shall mean December 29, 2025, the date on which the Debtor commenced the Chapter 11 Case.

1.58.    "*Plan"* shall mean this Plan of Liquidation, as same may be amended or modified from time to time in accordance with the terms hereof or in accordance with the Bankruptcy Code.

1.59.    *"Plan Supplement"* means the compilation of documents and forms of documents, schedules, and exhibits to the Plan (as amended, supplemented, or modified from time to time in accordance with the terms thereof, the Plan, the Bankruptcy Code, and the Bankruptcy Rules) to be Filed by the Debtor no later than fourteen (14) days before the Confirmation Date, and additional documents or amendments to previously Filed documents, Filed before the Confirmation Date as amendments to the Plan Supplement.

1.60.    "*Prepetition Mortgage*" means that certain first mortgage recorded against the Mortgaged Property by the Lender as the Holder of the Class 2 Secured Claim.

1.61.    "*Priority Claim*" shall mean an Allowed Claim which is entitled to priority pursuant to Section 507 of the Bankruptcy Code other than Administrative Claims and Priority Tax Claims.

1.62.    *"Professional"* means an Entity employed pursuant to a Bankruptcy Court order in accordance with sections 327, 328 or 1103 of the Bankruptcy Code and to be compensated for services rendered before or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, or 331 of the Bankruptcy Code.

1.63.    "*Professional Fee Claims*" means all Administrative Claims for the compensation of Professionals and the reimbursement of expenses incurred by such Professionals through and including the Effective Date to the extent such fees and expenses have not been previously paid.

1.64.    "*Proof of Claim*" means a proof of Claim Filed in the Chapter 11 Case.

1.65.    *"Pro Rata Share"* means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class, or the proportion that Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim under the Plan.

1.66.    "*Purchaser*" means the purchaser under the Mortgaged Property Sale which has been approved by the Bankruptcy Court as having submitting the highest and/or best offer for the Mortgaged Property in accordance with the Mortgaged Property Sale Procedures and this Plan.

1.67.    *"Representative"* shall mean with respect to a particular person, its affiliates, and any director, officer, member, equity holder, owner, manager, employee, agent, consultant, advisor, and/or other representative of that person and/or its affiliates, including, but not limited to, legal counsel, accountants and financial advisors.

1.68.    *"Secured"* means when referring to a Claim: (a) secured by a Lien on property in which the Debtor has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the applicable Holder's interest in the Debtor's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) Allowed pursuant to the Plan, or separate order of the Bankruptcy Court, as a secured claim.

1.69.    *"Security Interest"* shall mean "security interest" as set forth in section 101(51) of the Bankruptcy Code.

1.70.    "*Senior Secured Claim*" means any Allowed Secured Claim (other than claims arising under the Prepetition Mortgage) with a lien priority senior to, or equal to, that of the Prepetition Mortgage.

1.71.    *"Stalking Horse Agreement"* means that certain Purchase and Sale Agreement executed by the Stalking Horse Bidder, providing for, among other things, the sale of the Mortgaged Property to the Stalking Horse Bidder, which agreement shall be subject to solicitation of higher and/or better offers in accordance with the Mortgaged Property Sale Procedures and otherwise in accordance with this Plan.

1.72.    *"Stalking Horse Bidder"* means the person or entity, if any, which may be named in the Mortgaged Property Sale Procedures as making the opening bid.

1.73.    *"U.S. Trustee"* shall have the same meaning ascribed to it in 28 U.S.C. § 581, *et seq.* and, as used in the Plan, refers to the office of the United States Trustee for Region 2.

1.74.    "*Unimpaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that are unimpaired within the meaning of section 1124 of the Bankruptcy Code, including through payment in full in Cash.

**B.**        **Rules of Interpretation**.

For purposes herein:  (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, modified, or supplemented; (4) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (6) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (7) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (8) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (9) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (10) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (11) all references to docket numbers of documents Filed in the Chapter 11 Case are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (12) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Case, unless otherwise stated; and (13) any immaterial effectuating provisions may be interpreted by the Debtor or the Debtor in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

**C.**        **Computation of Tim**e. Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.  Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

**D.**        **Governing Law**. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control).

**E.**        **Reference to Monetary Figures**. All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

**F.**        **Controlling Document**. In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects.  In the event of an inconsistency between the Plan and any document included in the Plan Supplement, the terms of the relevant provision in the Plan shall control (unless stated otherwise in such document or in the Confirmation Order).  In the

event of an inconsistency between the Confirmation Order and the Plan, the Confirmation Order shall control.

G.      **Exhibits**.  All Exhibits to the Plan, including the Plan Supplement, are incorporated into and are a part of the Plan as if set forth in full herein, regardless of when filed.

## ARTICLE II

## PROVISIONS FOR PAYMENT OF ALLOWED
## ADMINISTRATIVE CLAIMS

2.01    Generally.  Administrative Claims and Priority Tax Claims are not classified in this Plan, and have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III hereof. The treatment of and consideration to be received by Holders of Allowed Administrative Claims and Allowed Priority Tax Claims pursuant to this Article II of the Plan shall be in full and complete satisfaction, settlement, and release of such Claims.  The Debtor's obligations in respect of such Allowed Administrative and Priority Tax Claims shall be satisfied in accordance with the terms of this Plan.

2.02    Administrative Claims.  Administrative Claims include Claims under section 503(b) of the Bankruptcy Code that are entitled to priority under section 507(a)(2) of the Bankruptcy Code, for costs or expenses of administration of the Chapter 11 Case, including, without limitation, any actual and necessary expenses of operating the business of the Debtor or preserving the Estate, and any and all fees and expenses of Professionals to the extent allowed by the Bankruptcy Court under sections 330, 331 or 503 of the Bankruptcy Code.

Except with respect to Administrative Claims that are Professional Fee Claims, and except to the extent that an Administrative Claim has already been paid during the Chapter 11 Case or a Holder of an Allowed Administrative Claim and the Debtor agree to less favorable treatment, each Holder of an Allowed Administrative Claim shall be paid in full in Cash from the Priority Claims Reserve the unpaid portion of its Allowed Administrative Claim on the latest of:  (a)  the Effective Date if such Administrative Claim is Allowed as of the Effective Date; (b) the date such Administrative Claim is Allowed or as soon as reasonably practicable thereafter; and (c) the date such Allowed Administrative Claim becomes due and payable, or as soon thereafter as is reasonably practicable; provided, that Allowed Administrative Claims that arise in the ordinary course of the Debtor's business shall be paid in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements and/or arrangements governing, instruments evidencing, or other documents relating to such transactions.  Notwithstanding the foregoing, no request for payment of an Administrative Claim need be Filed with respect to an Administrative Claim Allowed by Final Order.

Except as otherwise provided in this Article II and except with respect to Administrative Claims that are Professional Fee Claims, requests for payment of Allowed Administrative Claims must be Filed and served on the Debtor and the Lender, pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order no later than the Administrative Claims Bar Date. ***Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by such date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtor or its Property and such Administrative Claims shall be deemed discharged as of the Effective Date.***  Objections to such requests, if any, must be Filed and served on the Debtor and the Lender and the requesting party by the deadline established for such objections under Section 8.01 of the Plan.  Lender shall have standing to object to requests for the Allowance and payment of Administrative Claims. The failure to object to Confirmation by a Holder of an Allowed

29

Administrative Claim or Priority Tax Claim shall be deemed to be such Holder's consent to receive treatment for such Claim that is different from that set forth in section 1129(a)(9) of the Bankruptcy Code.  Notwithstanding the foregoing, no request for payment of an Administrative Claim need be Filed with respect to an Administrative Claim Allowed by Final Order.

Any amounts remaining in the Priority Claims Reserve after payment of all Allowed Administrative Claims and all Allowed Priority Claims shall promptly be transferred to the Debtor without any further action or order of the Bankruptcy Court.

2.03    Professional Compensation. All final requests for payment of Professional Fee Claims incurred during the period from the Petition Date through the Confirmation Date shall be Filed no later than twenty (20) days after the Effective Date.  All such final requests will be subject to approval by the Bankruptcy Court after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules, and prior orders of the Bankruptcy Court, and once approved by the Bankruptcy Court, shall be promptly paid from the Priority Claims Reserve up to the full Allowed amount thereof.

2.04    Statutory Fees. All fees due and payable pursuant to section 1930 of Title 28 of the United States Code before the Effective Date, including those fees arising from the sale of the Property contemplated by this Plan, shall be paid by the Debtor from the Mortgaged Property Sale Proceeds.  On and after the Effective Date, the Debtor shall pay any and all such fees when due and payable, and the Debtor shall File with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee.  The Debtor shall remain obligated to pay quarterly fees to the U.S. Trustee until the earliest of the Debtor's Chapter 11 Case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code.

**ARTICLE III**

**DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS**

**A.**      **Summary of Classification**.

Pursuant to Section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims and Interests. A Claim or an Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of the Class and is classified in a different Class to the extent the Claim or Interest qualifies within the description of that different Class. A Claim or Interest is placed in a particular Class for the purpose of receiving Distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or an Allowed Interest in that Class and such Claim or Interest has not been paid, released, settled or otherwise satisfied prior to the Effective Date.
A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes.  Except as otherwise provided in this Plan, a Claim or Interest also is classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and has not been paid, released, or otherwise satisfied before the Effective Date.  All Claims against and Interests in the Debtor, of whatever nature, whether or not scheduled, liquidated or unliquidated, absolute or contingent, including all claims arising from transactions with the Debtor or rejection of executory contracts and all Interests arising from the ownership of the stock or other membership interests in the Debtor, whether resulting in an Allowed Claim or not, shall be bound by the provisions of this Plan.

**B.**      **Class Identification**.

30

The Claims and Interests, other than Administrative Claims and Priority Claims, are hereby classified as follows:

| Class | Claim or Interest | Status | Voting Rights |
|---|---|---|---|
| 1 | Senior Secured Claims | Unimpaired | Not Entitled to Vote |
| 2 | Lender Secured Claim | Impaired | Entitled to Vote |
| 3 | DL Restoration Corp Claim | Impaired | Entitled to Vote |
| 4 | SW Engineering Corp Claim | Impaired | Entitled to Vote |
| 5 | Unsecured Claims | Impaired | Entitled to Vote |
| 6 | Interests | Impaired | Entitled to Vote |

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Class of Interests, are impaired under the Plan, the Bankruptcy Court shall, after notice and a hearing, determine such controversies.

## ARTICLE IV

## TREATMENT OF IMPAIRED CLAIMS
## AND INTERESTS UNDER THE PLAN

4.01    Generally.  Subject to Article VII hereof, each Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under the Plan the treatment described below in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, such Holder's Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to by the Debtor and the Holder of such Allowed Claim or Allowed Interest, as applicable.  Unless otherwise indicated, the Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the later of the Effective Date and the date such Holder's Claim or Interest becomes an Allowed Claim or Allowed Interest or as soon as reasonably practicable thereafter.

4.02    Class 1 – Senior Secured Claims.  The Class 1 Secured Claims are unimpaired and not entitled to vote on the Plan.

The New York City Department of Finance holds the only known claim in this Class.
The Class 1 Allowed Secured Claim shall be paid the full amount of its Claim in Cash on the Effective Date, except to the extent the Holder of such Claim agrees otherwise.

4.03    Class 2 –Lender Allowed Secured Claim.  Class 2 is Impaired.

(a)    In the event that, following implementation of the Mortgaged Property Sale Procedures, a credit bid by the Lender, or its designee, is determined to be the highest and/or best offer for the Mortgaged Property in accordance with the Mortgaged Property Sale Procedures, on the Effective Date, or as soon thereafter as may be practicable, and in full settlement and satisfaction of the Allowed Class 2 Secured Claim (but not full settlement and satisfaction of any remaining deficiency amount due to the Lender on the underlying obligation), the fee title interest in the Mortgaged Property shall be sold, transferred, conveyed and assigned to Lender or its designee, as of the Effective Date and otherwise being free and clear of any and all other existing Liens, Claims, encumbrances and interests of whatever kind or nature, *provided* that  Lender shall pay the Debtor, on the Effective Date, cash equal to the Confirmation Payment Amount; or

(b)    In the event that, following implementation of the Mortgaged Property Sale Procedures, a Purchaser (other than Lender) is determined to have submitted the highest and/or best offer for the Mortgaged Property, on the Effective Date, or later as specified below, the Debtor shall: (i) sell, transfer, convey and assign the Mortgaged Property to the successful Purchaser, with

such sale, transfer, conveyance and assignment being free and clear of any and all other existing Liens, Claims, encumbrances and interests of whatever kind or nature, and (ii) shall, at closing of the Mortgaged Property Sale,  (A) pay or escrow the Confirmation Payment Amount; and (B) pay Lender in Cash until its Allowed Secured Claim is paid in full, all sums remaining from the Mortgaged Property Sale Proceeds after the Class 1 Claim(s) has been paid in full.

(c) For the avoidance of doubt, nothing contained in this Plan shall be deemed a modification, waiver, settlement or release of any kind with respect to Lender's claims against any non-debtor third party, including but not necessarily limited to, all guarantors of the underlying mortgage loan to the Debtor,

In accordance with Sections 363(k) and 1129 of the Bankruptcy Code, the Holder of the Class 2 Allowed Secured Claim shall retain its right to credit bid the full amount of its Allowed Secured Claim in connection with any such Mortgaged Property Sale..

4.04     Class 3 – Allowed Secured Claim of DW Restoration Corp..  Class 3 is Impaired. The Holder of the Allowed Class 3 Claim is entitled to vote to accept or reject the Plan.

Class 3 consists of the Allowed Secured Claim of DW Restoration Corp against the Debtor. In full and final satisfaction of such Claim, on the Effective Date, or later as specified below, the Debtor shall: (i) sell, transfer, convey and assign the Mortgaged Property to the successful Purchaser, with such sale, transfer, conveyance and assignment being free and clear of any and all other existing Liens, Claims, encumbrances and interests of whatever kind or nature, and (ii) shall, at closing of the Mortgaged Property Sale,  (A) pay or escrow the Confirmation Payment Amount; and (B) pay the Holder of the Class 3 Claim in Cash until its Allowed Secured Claim is paid in full, all sums remaining from the Mortgaged Property Sale Proceeds after the Class 1 and Class 2 Claims have been paid in full.

4.05     Class 4 – Allowed Secured Claim of SW Engineering Corp.  Class 4 is Impaired. The Holder of Allowed Class 4 Claim  is entitled to vote to accept or reject the Plan.

Class 4 consists of the Allowed Secured Claim of SW Engineering Corp against the Debtor. In full and final satisfaction of such Claim, on the Effective Date, or later as specified below, the Debtor shall: (i) sell, transfer, convey and assign the Mortgaged Property to the successful Purchaser, with such sale, transfer, conveyance and assignment being free and clear of any and all other existing Liens, Claims, encumbrances and interests of whatever kind or nature, and (ii) shall, at closing of the Mortgaged Property Sale,  (A) pay or escrow the Confirmation Payment Amount; and (B) pay the Holder of the Class 3 Claim in Cash until its Allowed Secured Claim is paid in full, all sums remaining from the Mortgaged Property Sale Proceeds after the Class, 1 Class 2 and Class 3 Claims have been paid in full.

4.06     Class 5 - General Unsecured Claims.  Class 5 is Impaired.  Holders of Allowed Class 5 Claims are entitled to vote to accept or reject the Plan.

Each Holder of a Class 5 Allowed General Unsecured Claim, which shall include deficiencies on all Allowed Class 2, 3 and 4 Claims, shall receive in full and final satisfaction, compromise, settlement, release, and discharge of each such Allowed Claim: (a) its Pro Rata Share of Mortgaged Property Sale Proceeds remaining after Class 1, Class 2, Class 3 and Class 4 Claims have been paid in full.

4.07     Class 6 - Interests.  Class 6 is Impaired.  The Holder of Interests shall receive the Mortgaged Property Sale Proceeds remaining after Class 1, Class 2, Class 3, Class 4 and Class 5 Claims have been paid in full and is entitled to vote to accept or reject the Plan.

On the Effective Date: (1) any certificate, share, note, bond, indenture, purchase right, or other instrument or document, directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest, equity, or portfolio interest in the Debtor or any warrants,

options, or other securities exercisable or exchangeable for, or convertible into, debt, equity, ownership, or profits interests in the Debtor giving rise to any Claim or Interest shall be canceled and deemed surrendered as to the Debtor and shall not have any continuing obligations thereunder; and (2) the obligations of the Debtor pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificates or articles of incorporation or similar documents governing shares, certificates, notes, bonds, indenture, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtor shall be fully released, settled, and compromised, except with respect to any remaining obligation to wind up the affairs of the Debtor. However, in the event that the proceeds of the Mortgaged Property Sale are sufficient to pay all Allowed Claims in full, any remaining proceeds will be distributed to the Interest Holder.

**ARTICLE V**

**MEANS FOR EXECUTION AND
IMPLEMENTATION OF THE PLAN**

5.01    General Settlement of Claims.  Except as otherwise set forth herein, pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor, the Estate, and Holders of Claims and Interests and is fair, equitable, and reasonable.  In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Debtor and Debtor may compromise and settle Claims against the Debtor and the Estate and Causes of Action against other Entities.

5.02    Marketing and Sale of the Mortgaged Property. The sole means for executing the Plan is through an auction sale of the Mortgaged Property. The Plan is grounded in the determination by the Debtor that maximum recoverable value, and the creation of the funds required to make the Distributions provided for under the Plan is best achieved through a prompt and orderly implementation of a marketing process by which the Mortgaged Property is sold at auction following exposure to the marketplace. Toward that end, the Debtor has engaged the Mortgaged Property Broker to implement the Mortgaged Property Sale Procedures in the period leading up to the Confirmation Hearing, with a view toward (i) conducting an auction before the Confirmation Hearing Date (ii) obtaining approval of a sale of the Mortgaged Property on the Confirmation Hearing Date and consummating the Mortgaged Property Sale within 30-60 days of the entry of an order approving the sale to a Purchaser.

The Debtor will sell the Mortgaged Property to the maker of the highest and/or best offer for the Mortgaged Property as identified by the Debtor in consultation with the Mortgaged Property Broker following implementation of the Mortgaged Property Sale Procedures and approval of the Bankruptcy Court. The Mortgaged Property will be sold free and clear of any and all existing Liens, Claims, encumbrances and interests of whatever kind or nature.

The Mortgaged Property Broker, working in conjunction with the Debtor, shall implement the Mortgaged Property Sale Procedures in connection with the solicitation of bids for the Mortgaged Property and the conduct of any competitive bid auction in connection therewith. Any amounts due to the Mortgaged Property Broker shall be paid upon the later of a court order authorizing payment or the closing of the Mortgaged Property Sale. If an order approving the Mortgaged Property Broker's buyer's premium fee or

33

commission has not yet been approved by the court by the time of the closing of the Mortgaged Property Sale, the Purchaser (or the Lender if its credit bid is accepted by the Debtor) will be required to deposit the sums due into the Debtor's attorney's escrow account.

The Plan further contemplates that upon its determination of the highest and/or best offer for the Mortgaged Property following implementation of the Mortgaged Property Sale Procedures, the Confirmation Order shall authorize and direct the Debtor to consummate a sale of the Mortgaged Property to the Purchaser offering the highest or best offer for the Mortgaged Property, which may be the Stalking Horse Bidder under the Stalking Horse Agreement.

The proceeds available after the closing of the Mortgaged Property Sale shall be distributed in the following order in payment of:

1.      Administrative Claims.
2.      Statutory Fees due and payable pursuant to section 1930 of Title 28 of the United States Code before the Effective Date including those fees arising from the sale of the Property contemplated by this Plan.
3.      Allowed Class 1 Senior Secured Claims.
4.      Allowed Class 2 Lender Secured Claim.
5.      Allowed Class 3 DL Restoration Corp. Secured Claim
6.      Allowed Class 4 SW Engineering Corp. Secured Claim
7.      Allowed Class 5 Unsecured Claims.
8.      Allowed Class 6 Interests.

5.03    Corporate Action. The entry of the Confirmation Order shall constitute authorization for the Debtor and/or the Debtor, as applicable, to take or to cause to be taken on behalf of the Debtor all limited liability company actions necessary or appropriate to consummate and implement the provisions of the Plan prior to, on and after the Effective Date, including, without limitation, the execution and delivery of any documents or instruments of transfer necessary, appropriate or incident to the implementation of the Plan, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court upon confirmation of the Plan. All such actions shall be deemed to have occurred and shall be in effect pursuant to applicable non-bankruptcy law and the Bankruptcy Code, without any requirement of further action by the stockholders, members, or directors of the Debtor. On the Effective Date, the Debtor and the Debtor are authorized, as attorneys in fact for the Debtor, to execute and deliver the agreements, documents and instruments contemplated by the Plan and the Plan Supplement, in the name and on behalf of the Debtor.

5.04    Establishment of Claims Reserve. Upon the occurrence of the Effective Date, the Debtor shall establish the Claims Reserve for payment of all Claims as to which an objection has been interposed.

5.05    Dissolution of the Debtor. The Confirmation Order shall authorize: (a) the dissolution of the Debtor; and (b) the filing of a certificate of dissolution (or its equivalent) with the secretary of state or similar official of each jurisdiction of incorporation of the Debtor at such time as shall be determined appropriate by the Debtor. Until such time as the Debtor has been dissolved the Debtor shall continue to be managed by its Manager, Arbel Capital Advisors LLC.

5.06    Exemption from Certain Transfer Taxes and Fees. To the maximum extent provided by section 1146(a) of the Bankruptcy Code, any transfer of the Mortgaged Property pursuant to the Mortgaged Property Sale and this Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or

34

local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents pursuant to such transfers of property without the payment of any such tax, recordation fee, or governmental assessment.

## ARTICLE VI

## TREATMENT OF EXECUTORY
## CONTRACTS AND UNEXPIRED LEASES

6.01    General Assumption and Assignment. In order to facilitate the sale, transfer and conveyance of the Mortgaged Property, the Plan constitutes and incorporates a motion by the Debtor, in accordance with Section 365 of the Bankruptcy Code, to assume and assign to the Purchaser (or its designee) those executory contracts and unexpired leases that are designated and identified for assumption by the Purchaser as part of the Mortgaged Property Sale, a schedule of which contracts/leases shall be included in the Plan Supplement. The Confirmation Order shall represent and reflect an order of the Bankruptcy Court approving such assumptions and assignments or rejection as of the Effective Date. In the event any counterparty to an executory contract and/or unexpired lease believes that there is outstanding any pre-petition or post-petition monetary amount under such contract or lease that must be cured as a condition to assumption and assignment under Section 365 of the Bankruptcy Code, any such cure claim must be filed with the Bankruptcy Court and served on counsel to the Debtor not later than seven (7) days prior to the Confirmation Hearing.

6.02    General Rejection. The Plan also constitutes and incorporates a motion by the Debtor, in accordance with Section 365 of the Bankruptcy Code, to reject any executory contract and/or unexpired lease that is not specifically designated and identified for assumption by the Purchaser as part of the Mortgaged Property Sale, a schedule of which contracts/leases shall be included in the Plan Supplement.

6.03    Rejection Damage Claims.  Proofs of Claims with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be Filed with the Bankruptcy Court within the latest to occur of: (1) 30 days after the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection; and (2) 30 days after notice of any rejection that occurs after the Effective Date. **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease that are not Filed within such time will be automatically Disallowed, forever barred from assertion, and shall not be enforceable against, as applicable, the Debtor, the Estate, or property of the foregoing parties, without the need for any objection by the Debtor or the Debtor, or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a Proof of Claim to the contrary**.  Claims arising from the rejection of the Debtor's Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with Article III of the Plan.

6.04    Reservation of Rights. Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the schedule of assumed/rejected Executory Contracts and Unexpired Leases, or anything contained in the Plan, shall constitute an admission by the Debtor that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtor has any liability thereunder.

6.05    Nonoccurrence of Effective Date. In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting any Executory Contract or Unexpired Lease pursuant to section 365(d)(4) of the Bankruptcy Code.

## ARTICLE VII

### PROVISIONS GOVERNING DISTRIBUTIONS

7.01    Timing and Calculation of Amounts to Be Distributed. Unless otherwise provided in the Plan, on the Effective Date (or, if a Claim is not an Allowed Claim on the Effective Date, on the date that such Claim becomes Allowed or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim or Interest (or such Holder's affiliate) shall receive the full amount of the distributions that the Plan provides for Allowed Claims and Interests in each applicable Class.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VII of the Plan.  Except as otherwise provided in the Plan, Holders of Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

7.02    Delivery of Distributions in General. Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims, except as otherwise provided in this Article VII, shall be made to Holders of record as of the Distribution Record Date by the Debtor:  (1) to the signatory set forth on any of the Proof of Claim Filed by such Holder or other representative identified therein (or at the last known addresses of such Holder if no Proof of Claim is Filed or if the Debtor has been notified in writing of a change of address); (2) at the addresses set forth in any written notices of address changes delivered to the Debtor after the date of any related Proof of Claim; (3) at the addresses reflected in the Schedules if no Proof of Claim has been Filed and the Debtor has not received a written notice of a change of address; or (4) on any counsel that has appeared in the Chapter 11 Case on such Holder's behalf.  Subject to this Article VII, distributions under the Plan on account of Allowed Claims shall not be subject to levy, garnishment, attachment, or like legal process, so that each Holder of an Allowed Claim shall have and receive the benefit of the distributions in the manner set forth in the Plan.  Neither the Debtor nor Debtor shall incur any liability whatsoever on account of any distributions under the Plan except for gross negligence or willful misconduct.

7.03    Unclaimed Property.  Any Holder of an Allowed Claim that does not assert a Claim pursuant to this Plan for an undeliverable or unclaimed distribution within 60 days after the first distribution is made to such Holder shall be deemed to have forfeited its claim for such undeliverable or unclaimed distribution and shall be forever barred and enjoined from asserting any such claim for the undeliverable or unclaimed distribution against the Debtor, the Estate, the Debtor, or their respective properties or assets.  In such cases, any Cash or other property held by the Debtor on account of such claims for undeliverable or unclaimed distributions, shall become the property of Debtor notwithstanding any federal or state escheat laws to the contrary. The Debtor and his or her respective agents and attorneys are under no duty to take any action to attempt to locate any Claim Holder.

7.04    Compliance With Tax Requirements. In connection with the Plan, to the extent applicable, the Debtor shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Debtor shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Debtor and Debtor each reserve the right to allocate all distributions

made under the Plan in compliance with applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances. Property deposited into the various Claim distribution accounts described elsewhere in the Plan (including the Priority Claims Reserve) will be subject to disputed ownership fund treatment under section 1.468B-9 of the United States Treasury Regulations. All corresponding elections with respect to such accounts shall be made, and such treatment shall be applied to the extent possible for state, local, and non-U.S. tax purposes.  Under such treatment, a separate federal income tax return shall be filed with the IRS with respect to such accounts, any taxes (including with respect to interest, if any, or appreciation in property between the Effective Date and date of distribution) imposed on such accounts shall be paid out of the assets of such accounts (and reductions shall be made to amounts disbursed from such accounts to account for the need to pay such taxes).

7.05    Fractional Cents. Any other provision of this Plan to the contrary notwithstanding, no payment of fractions of cents will be made. Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding down of such fraction to the nearest whole cent.

7.06    Payments of Less than One Hundred Dollars.  If a Cash payment otherwise provided for by this Plan with respect to an Allowed Claim or Interest would be less than one hundred dollars ($100.00) (whether in the aggregate or on any payment date provided in this Plan), notwithstanding any contrary provision of this Plan, the Debtor shall not be required to make such payment.

7.07    Setoffs.  Except as otherwise provided for herein, the Debtor may, but shall not be required to, set off against any Claim and the payments to be made pursuant to this Plan in respect of such Claim, claims of any nature whatsoever that the Debtor or its estate may have against the Creditor, but neither the failure to do so nor the allowance of a Claim hereunder shall constitute a waiver or release by the Debtor or its estate of any Claim it may have against the Creditor.

7.08    Allocations. Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest as Allowed herein.

7.09    No Postpetition Interest on Claims. Interest shall not accrue or be paid on any Claims and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any such Claim unless required by applicable bankruptcy law or otherwise specifically provided for in an order of the Bankruptcy Court, the Plan, or the Confirmation Order, This provision shall not be construed as limiting Lender's rights under section 506(b) of the Bankruptcy Code.

7.10    Claims Reserve.  On the Effective Date, the Debtor shall establish the Claims Reserve by depositing Cash in the amount which may be due under the Plan for the holder of any Claim as to which an objection has been interposed.  If all or any portion of a such Claim shall become a Disallowed Claim, then the amount on deposit in the Claims Reserve attributable to such surplus or such Disallowed Claim, shall promptly be transferred to Lender without any further action or order of the Court.

**ARTICLE VIII**

**PROCEDURES FOR RESOLVING AND TREATING
CONTESTED AND CONTINGENT CLAIMS AND INTERESTS**

8.01    Objections to Claims.  From and after the Effective Date only the Debtor shall have authorization to file and/or prosecute objections to Claims and/or Interests. Objections to Claims shall be filed with the Bankruptcy Court and served upon the affected Creditor(s) or Interest Holder(s) no later than

thirty (30) days after the Effective Date; provided, however, that this deadline may be extended by the Bankruptcy Court upon motion of the Debtor without the requirement of prior notice or a hearing.

8.02    No Distribution Pending Allowance. Notwithstanding any other provision of the Plan, no payments or Distributions shall be made with respect to all or any portion of a Disputed Claim or Disputed Interest unless and until all objections to such Disputed Claim or Disputed Interest have been determined by a Final Order of the Bankruptcy Court.

8.03    Reserve for Allocated Distributions. The Debtor shall withhold from the property to be distributed under the Plan an amount which shall be sufficient to be distributed on account of such Disputed Claim(s). As to any Disputed Claim, upon a request for estimation by the Debtorthe Bankruptcy Court shall determine what amount is sufficient to withhold.

8.04    Distributions after Allowance.  Payments and Distributions to each Holder of a Disputed Claim, to the extent such Disputed Claim ultimately becomes an Allowed Claim, shall be made in accordance with the provisions of the Plan governing the Class of Claims to which the subject Claim belongs.

8.05    Treatment of Contingent, Disputed and Unliquidated Claims. Until such time as a contingent, unliquidated or Disputed Claim becomes fixed, liquidated, absolute, and Allowed, such claim shall be treated as a Disputed Claim for purposes related to estimations, allocations, and Distributions under the Plan.

8.06    Preservation of Rights. Except to the extent that any Claim is Allowed during the Chapter 11 cases or expressly by this Plan, or the Confirmation Order, nothing, including, but not limited to, the failure of the Debtor, the Debtor, or the Debtor to object to a Claim or Interest for any reason during the pendency of the Chapter 11 Case, shall affect, prejudice, diminish or impair the rights and legal and equitable defenses of the Debtor or the Debtor with respect to any Claim or Interest, including, but not limited to, all rights of the Debtor and/or the Debtor to contest or defend themselves against such Claims or Interests in any lawful manner or forum when and if such Claim or Interest is sought to be enforced by the Holder thereof.

8.07    Estimation of Claims. Before, on, or after the Effective Date, the Debtor may (but is not required to) at any time request that the Bankruptcy Court estimate any Claim pursuant to applicable law, including, without limitation, pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to estimate any such Claim, including during the litigation of any objection to any Claim or during the pendency of any appeal relating to such objection.  Notwithstanding any provision to the contrary in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any Claim, such estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions and discharge) and may be used as evidence in any supplemental proceedings, and the Debtor and Debtor may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim.  Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before seven (7) days after the date on which such Claim is estimated.  Each of the foregoing Claims and objection, estimation, and resolution procedures are

cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

8.08 Disallowance of Claims. Except as otherwise provided herein or as agreed to by the Debtor, any and all Proofs of Claim Filed after the Bar Date shall be deemed Disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and Holders of such Claims may not receive any distributions on account of such Claims, unless such late Proof of Claim has been deemed timely Filed by a Final Order.

8.09 Amendments to Claims. On or after the Confirmation Date, a Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court or the Debtor, and any such new or amended Claim Filed shall be deemed Disallowed in full and expunged without any further notice to or action, order, or approval of the Bankruptcy Court to the maximum extent provided by applicable law.

## ARTICLE IX

## INJUNCTION, AND RELATED PROVISIONS

9.01 Term of Injunctions or Stays. Unless otherwise provided in the Plan or the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

9.02 Injunction. The following provisions shall apply and shall be fully set forth in the Confirmation Order.

(a) **Injunctions Against Interference with Consummation or Implementation of Plan**. **All holders of Claims or Interests shall be enjoined from commencing or continuing any judicial or administrative proceeding or employing any process against the Debtor or the Estate with the intent or effect of interfering with the consummation or implementation of this Plan or the transfers, payments or Distributions to be made hereunder.**

(b) **Plan Injunction**. **To the fullest extent authorized or provided by the Bankruptcy Code, except as otherwise specifically provided for by this Plan, as and from the Effective Date, all Persons shall be enjoined from (i) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order; (ii) the creation, perfection or enforcement of any Encumbrance of any kind; (iii) the commencement or continuation of any action, employment of process or act to collect, offset or recover any Claim or Cause of Action satisfied, released or enjoined under this Plan; and/or (iv) the assertion of any right of setoff, counterclaim, exculpation, or subrogation of any kind, in each case against the property of the Debtor or the Estate**

(c) **No Bar to Claims Against Third Parties**. **Holders of Claims or Interests against the Debtor are not barred or otherwise enjoined by the Plan from pursuing any recovery against Persons that are not the Debtor in accordance with the terms set out herein in Article IX of this Plan.**

(d) **Exculpation for Debtor and Estate and its Professionals**.

**To the maximum extent permitted by applicable law, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from, any Claim,**

**Interest, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, loss, remedy, or liability for any claim, arising on or after the Petition Date and prior to or on the Effective Date, in connection with or arising out of the commencement, filing or administration of the Chapter 11 Case; the operation and marketing of the Debtor's Property during the Chapter 11 Case; the negotiation, formulation, filing, prosecution and pursuit of the sale of the Mortgaged Property; the negotiation, formulation, filing, prosecution, pursuit, and approval of the Disclosure Statement, the Mortgaged Property Sale Procedures and this Plan, or the solicitation of votes for, or confirmation of, this Plan; the funding of this Plan; the occurrence of the Effective Date; the administration of this Plan or the property to be distributed under this Plan; or the transactions in furtherance of any of the foregoing; except for Claims or Causes of Action arising out of or related to any act or omission of an Exculpated Party that is judicially determined in a Final Order to constitute bad faith, criminal conduct, intentional fraud, gross negligence, or willful misconduct, but in all respects such entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan. To the extent permitted by section 1125(e) of the Bankruptcy Code, the Exculpated Parties and each of their respective affiliates, agents, directors, officers, employees, advisors, and attorneys have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distribution of securities pursuant to this Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan, including the issuance of Securities thereunder. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability. This clause shall not apply to any malpractice claims which may be asserted by the Debtor against its attorneys.**

**Exculpated Parties means, solely in their capacities as such: (a) the Debtor and the Estate; (b) the Debtor's directors, officers, and managing members; (c) the Professionals; and (d) with respect to each of the foregoing Entities in clauses (a) through (c), such Entities' successors and assigns.**

**To the full extent permitted by section 1125(e) of the Bankruptcy Code, the Debtor, and each of its current members, managers, officers employees and professionals, their respective officers, directors, employees and professionals (including professional firms and individuals within such firms), shall neither have nor incur any liability to any Person for any act taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, implementation, administration, funding, confirmation or consummation of the Plan, the Disclosure Statement, or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan, or any act taken or omitted to be taken during the Bankruptcy Case, except for (i) acts or omissions as a result of bad faith, criminal conduct, intentional fraud, willful misconduct or gross negligence and (ii) liability for any debt owed to the United States Government, any state, city or municipality arising under (a) the Internal Revenue Code or any state, city or municipal tax code, (b) the environmental laws of the United States or any state, city or municipality, (c) laws regarding the regulation of securities administered by the SEC or (d) any criminal laws of the United States, any state, city or municipality. From and after the Effective Date, a copy of the Confirmation Order and the Plan shall constitute, and may be submitted as, a complete defense to any Claim or liability released pursuant to the Plan.**

40

## ARTICLE X

## CONDITIONS TO EFFECTIVENESS OF THE PLAN

10.01   <u>Conditions Precedent to the Effective Date</u>. It shall be a condition to the effectiveness of the Plan that the following shall have been satisfied (or waived pursuant to the provisions of Section 11.02 hereof):

The Confirmation Order, shall have been duly entered and be in full force and effect.

10.02   <u>Waiver of Conditions</u>.  The Debtor, in its sole discretion, may at any time, without notice or authorization of the Bankruptcy Court, waive the condition set forth in Section 10.01 above.  The failure of the Debtor to satisfy or waive such condition may be asserted by the Debtor regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by the Debtor).  The Debtor reserves the right to assert that any appeal from the Confirmation Order shall be moot after consummation of the Plan.

10.03   <u>Substantial Consummation</u>. "Substantial Consummation" of the Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on closing of the sale of the Mortgaged Property.

## ARTICLE XI

## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

11.01   <u>Modification of Plan</u>.  Modifications of the Plan may be proposed in writing by the Debtor at any time before Confirmation, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Debtor shall have complied with section 1125 of the Bankruptcy Code. The Plan may be modified at any time after Confirmation and before its substantial consummation, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as modified, under section 1129 of the Bankruptcy Code. A Holder of a Claim or Interest that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as modified, unless, within the time fixed by the Bankruptcy Court, such Holder changes its previous acceptance or rejection. Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

## ARTICLE XII

## RETENTION OF JURISDICTION

12.01   Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Chapter 11 Case and all matters arising out of or related to the Chapter 11 Case and the Plan, including jurisdiction to:

1.   Allow, Disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims;

2.   Decide and resolve all matters related to the granting and denying, in whole or in

part, any applications for allowance of compensation or reimbursement of expenses to Professionals;

3.  Resolve any matters related to: (a) the assumption or rejection of any Executory Contract or Unexpired Lease and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Claims related to the rejection of an Executory Contract or Unexpired Lease, cure amounts pursuant to section 365 of the Bankruptcy Code, or any other matter related to such Executory Contract or Unexpired Lease; (b) amending, modifying, or supplementing, after the Effective Date, any Executory Contracts or Unexpired Leases to the list of Executory Contracts and Unexpired Leases to be assumed and assigned or rejected or otherwise; and (c) any dispute regarding whether a contract or lease is or was executory or expired;

4.  Ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

5.  Adjudicate, decide, or resolve any motions, adversary proceedings, contested, or litigated matters, and any other matters, and grant or deny any applications involving the Debtor that may be pending on the Effective Date;

6.  Adjudicate, decide, or resolve any and all matters related to Causes of Action;

7.  Adjudicate, decide, or resolve any and all matters related to sections 1141 and 1145 of the Bankruptcy Code;

8.  Enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement, including, without limitation, arising under or in connection with the Mortgaged Property Sale;

9.  Enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

10.  Resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

11.  Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

12.  Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the settlements, compromises, discharges, releases, injunctions, exculpations, and other provisions contained in Article X hereof and enter such orders as may be necessary or appropriate to implement or enforce such releases, injunctions, and other provisions;

13.  Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid pursuant to the Plan;

14.  Enter and implement such orders as are necessary or appropriate if the

Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

15.    Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or the Plan Supplement;

16.    Adjudicate any and all disputes arising from or relating to distributions under the Plan or any transactions contemplated therein;

17.    Consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

18.    Determine requests for the payment of Claims entitled to priority pursuant to section 507 of the Bankruptcy Code;

19.    Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

20.    Hear and determine all disputes involving the existence, nature, or scope of the release provisions set forth in the Plan;

21.    Enforce all orders previously entered by the Bankruptcy Court in the Chapter 11 Case;

22.    Hear any other matter not inconsistent with the Bankruptcy Code; and

23.    Enter an order closing the Chapter 11 Case.

## ARTICLE XIII

## GENERAL PROVISIONS

13.01    Immediate Binding Effect.  Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan, the final versions of the documents contained in the Plan Supplement, and the Confirmation Order shall be immediately effective and enforceable and deemed binding upon the Debtor, as applicable, and any and all Holders of Claims or Interests (regardless of whether such Claims or Interests are deemed to have accepted or rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Entity acquiring property under the Plan or the Confirmation Order, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtor.  All Claims and debts shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or debt has voted on the Plan.

13.02    Additional Documents. On or before the Effective Date, the Debtor may File with the Bankruptcy Court such agreements and other documents as may be necessary or advisable to effectuate and further evidence the terms and conditions of the Plan.  The Debtor, the Debtor, all Holders of Claims and Interests receiving distributions pursuant to the Plan, and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

13.03    Reservation of Rights. Before the Effective Date, neither the Plan, any statement or provision contained in the Plan, nor any action taken or not taken by the Debtor with respect to the Plan,

43

the Disclosure Statement, the Confirmation Order, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights with respect to any Claims or Interests.

13.04   Saturday, Sunday or Legal Holiday.  If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

13.05   Severability.  If any term or provision of the Plan is held by the Bankruptcy Court prior to or at the time of Confirmation to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as so altered or interpreted.  In the event of any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan may, at the Debtor's option, remain in full force and effect and not be deemed affected.  However, the Debtor reserves the right not to proceed to Confirmation or consummation of the Plan if any such ruling occurs.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

13.06   Votes Solicited in Good Faith. Upon entry of the Confirmation Order, the Debtor will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and, pursuant to section 1125(e) of the Bankruptcy Code, the Debtor and each of its Affiliates, agents, representatives, members, principals, shareholders, officers, directors, managers, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code, and, therefore, neither any of such parties or individuals nor the Debtor will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan.

13.07   Waiver and Estoppel. Each Holder of a Claim or Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured, or not subordinated by virtue of an agreement made with the Debtor or its counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed before the Confirmation Date.

13.8   Exhibits. All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtor's counsel at the address above.

Dated:  March 13, 2026                          52 Charlie LLC,
                                                By Arbel Capital Advisors LLC, Manager

                                                By:  /s/*Ephraim Diamond*
                                                Name:  Ephraim Diamond
                                                    Its:  Managing Member

44